FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 MAY 26  P 12: 22

U.S. DISTRICT COURT
DISTRICT OF MASS

OTIS ELEVATOR COMPANY,                    )
                                          )
        Plaintiff,                        )    **04   11108  JLT**
                                          )
v.                                        )    Docket No.
                                          )
LOCAL 4, INTERNATIONAL UNION              )    MAGISTRATE JUDGE Cohen
OF ELEVATOR CONSTRUCTORS;                 )
MICHAEL LANGER, INDIVIDUALLY, and as      )
BUSINESS MANAGER; KEVIN McGETTIGAN,       )
INDIVIDUALLY, and as BUSINESS             )
REPRESENTATIVE; STEVE MORSE,              )
INDIVIDUALLY, and as BUSINESS             )
REPRESENTATIVE, and all others            )
conspiring, acting in concert or otherwise )
participating with them or acting in their aid )
or behalf.                                )
                                          )
        Defendants.                       )

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED Yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. T.O.M
DATE 5.26.04

## VERIFIED COMPLAINT
## INJUNCTIVE RELIEF SOUGHT

## THE PARTIES

1.      Plaintiff, Otis Elevator Company ("Otis"), a New Jersey corporation, is engaged

in the business of constructing, modernizing, repairing and servicing of elevators and escalators

throughout the United States, including Massachusetts.

2.      Otis employs elevator constructor Mechanics, Helpers, and Apprentices

represented by the International Union of Elevator Constructors (the "IUEC") for and on behalf

of its locals including Defendant IUEC Local 4 ("Local 4").

3.      This is an action to enjoin a work stoppage and other interferences with the

Plaintiff's operations in violation of contract between an employer and a labor organization

DOWNS
RACHLIN
MARTIN PLLC

representing employees in an industry affecting commerce, as defined in the Labor Management

Relations Act, 29 U.S.C. § 141 et seq.  This Court has jurisdiction of this action pursuant to 29

U.S.C. § 185(a).

      4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 (b).

      5.      Otis is an employer within the meaning of Section 2(2) of the Labor Management

Relations Act of 1947, as amended, 29 U.S.C. § 152(2).

      6.      IUEC, which has a principal place of business at 7154 Columbia Gateway Drive,

Columbia, MD 21044, is the exclusive collective-bargaining representative of elevator

constructor Mechanics, Helpers, and Apprentices, for and on behalf of its locals, including

Defendant IUEC Local 4, which has a principal place of business at 645R Morrissey Blvd.,

Dorchester, Massachusetts 02122.  Local 4 represents Mechanics, Helpers, and Apprentices

employed by Otis in a region that includes Eastern Massachusetts, New Hampshire, and Maine

regions.

      7.      Defendant Michael Langer is Business Manager for Local 4.

      8.      Defendants Kevin McGettigan and Steve Morse are Business Representatives of

Local 4.

      9.      Local 4 is a labor organization within the meaning of Section 2(5) of the Labor

Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5).

      10.     This action is related to a previous action filed in this Court, involving the same

parties, to enjoin another recent illegal work stoppage by Local 4 over another arbitrable dispute

under Article IV of the contract involving "nut-serts."  That action is Civil Action No. 04-10966-

JLT and resulted in a Restraining Order dated May 19, 2004 issued by Judge Stearns.

## THE COLLECTIVE-BARGAINING AGREEMENT

11.    Otis and the IUEC, for and on behalf of its locals including Local 4, have entered into a collective-bargaining agreement, which became effective July 9, 2002 and remains in full force and effect until July 8, 2007 (the "Otis Agreement"). A true and accurate copy of the Otis Agreement is attached as Exhibit A.

12.    Since 1987, Otis has entered into a series of five-year collective-bargaining agreements with the IUEC, "for and on behalf of its affiliated local unions . . . ." Prior to 1987, Otis was a member of the National Elevator Industry, Inc. ("NEII") a multi-employer association that negotiated a series of collective-bargaining agreements with the IUEC (the "Standard Agreements").

13.    The Otis Agreement has language substantially the same as the Standard Agreements in many articles.

14.    Article XIV of the Otis Agreement expressly prohibits strikes during the term of the Agreement. It provides in pertinent part:

### ARTICLE XIV
### STRIKES AND LOCKOUTS

**Par. 1.**   It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party. It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2.**   No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by lawful picketing or strikes by building trades local unions affiliated

)OWNS
.ACHLIN
1ARTIN PLLC

3

with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.**  In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers and Apprentices on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

15.    Article XV of the Otis Agreement requires that "[a]ny difference or dispute regarding the application and construction of this Agreement" shall be resolved under the grievance/arbitration procedure set forth in the Otis Agreement, which provides for final and binding arbitration by an impartial arbitrator.

16.    The Otis Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers, and Apprentices employed by Otis in Massachusetts, New Hampshire, and Maine.  The Otis Agreement provides that all elevator and escalator construction, service, repair, and modernization must be performed exclusively by elevator constructor Mechanics, Helpers, and Apprentices represented by the IUEC.

### THE UNDERLYING DISPUTE AND THE UNLAWFUL WORK STOPPAGE

17.    Otis has valuable contracts with S.V. Raleigh ("Raleigh") to install two (2) hydraulic elevators at Flagship Storage in Mashpee, Massachusetts (the "Mashpee project"); with Sterling Hill Development ("Sterling") to install a five-story hydraulic elevator at the Inn at Sterling Hill, in Exeter, New Hampshire (the "Exeter project");  with Millstone Properties ("Millstone") to install a four-story hydraulic elevator at the Millstone Apartments, in Dover, New Hampshire (the "Dover project"); and with Pochebit Company ("Pochebit") to install a four-story hydraulic elevator at the Inn at Hilltop, in Falmouth, Maine (the "Falmouth project").

DOWNS
LACHLIN
MARTIN PLLC

4

18.    All of these projects are time-sensitive.  All of these projects involve agreements with construction contractors with whom Otis' current and future customer relationship will be severely damaged if the elevator installations are not completed on a timely basis.

19.    A dispute has recently arisen between Otis and Business Agents of Local 4 involving "plunger and cylinder installation" in these hydraulic elevators.  This dispute has resulted in an illegal work stoppage by Otis' employees on these projects.

20.    Under Otis' general installation methods, the heavy plunger and cylinder units are delivered to the jobsite pre-assembled, on flatbed trucks when the construction of the building has just begun and a foundation is complete.  Pursuant to Otis' methods, the plunger and cylinder are then hoisted by crane and lowered into the wellhole.

21.    Local 4 officials, Business Manager Michael Langer and Business Representatives Kevin McGettigan and Steve Morse now contend that the units cannot be hoisted and lowered with a crane unless Otis agrees that the employees may later remove the plunger and cylinder with rigging and hoists (a chain fall) and reinstall them.

22.    There is absolutely no benefit to performing the plunger and cylinder unit installation in the manner insisted by Local 4.  On the contrary, having the workers manually re-lift the heavy unit with a hoist, once it is already sitting in the wellhole, involves serious and unnecessary physical safety concerns, as well as delay and expense concerns.  The only reason to perform the installation in the manner demanded by the Local 4 business managers and representatives, as opposed to the single-step, crane-only method, is to create additional, unnecessary work for the union members.

23.    Richard Hogue, Otis' Construction Superintendent for the Exeter, Dover, and Falmouth projects described above, has supervised the installation of approximately 50 or 60

hydraulic elevators in the past year employing the method of installing the plunger and cylinder unit by crane, and these installations have been performed by the same Local 4 members who now say that they have been instructed by Local 4 not to perform the installation at all unless Otis agrees to the multiple step procedure described above. Indeed, the Exeter project described above is the second of an eight (8) building project at the same site, and Construction Superintendent Hogue has already supervised the installation of one elevator at this site using a crane, by the same Local 4 union members who are now prohibited by Local 4 from doing it.

24.     On Wednesday, May 5, 2004, Construction Superintendent Hogue instructed Otis Mechanic Kevin McAvoy to install two plunger/cylinder units on a jobsite in Portland, Maine. In customary fashion, Mechanic McAvoy called the job in to Local 4 before starting. An agent of Local 4 called Mechanic McAvoy back shortly thereafter and advised him not to perform the installation with a crane. Eventually Mechanic McAvoy and Helper Scott Melcher went ahead and did the installation with a crane per Construction Superintendent Hogue's instructions.

25.     On Monday, May 24, Construction Superintendent Hogue called Local 4 Business Representative Kevin McGettigan on an unrelated matter. Business Representative McGettigan eventually asked Construction Superintendent Hogue if he had any plunger/cylinder units to install. Construction Superintendent Hogue said that he did, later on in the week. Business Representative McGettigan responded that doing installations with a crane was going to be an issue. Construction Superintendent Hogue asked Business Representative McGettigan if his members would be allowed to install by crane only, and Business Representative McGettigan responded that no, they were being instructed not to do such installations.

26.    Otis had scheduled the installation of four plunger/cylinder units for Wednesday, May 26, as follows: Exeter and Dover, New Hampshire, and Falmouth, Maine and Mashpee, Massachusetts.

27.    On Thursday, May 13, 2004, Jim Cummings, Otis' Construction Superintendent for the Mashpee project, conducted a safety meeting with his crew. Local 4 Business Representatives McGettigan and Morse attended the safety meeting. After the safety meeting, they convened a meeting outside with the Local 4 members. During that meeting, Business Representatives McGettigan and Morse instructed the Local 4 members that they would not be permitted to hoist or install plunger/cylinder units by use of a crane.

28.    On Tuesday, May 25, Construction Superintendent Hogue called Local 4 Business Representative Steve Morse to discuss the Exeter and Dover jobs. Business Representative Morse asked whether the employees would simply be unloading the plunger/cylinder units from the delivery truck, or actually performing the installation. Construction Superintendent Hogue responded that he wanted them to perform the installation of the units. Business Representative Morse then confirmed that the employees would not be allowed to do that with a crane.

29.    On Monday, May 24, 2004, Mr. Cummings was informed that members of his crew had been directly contacted by Local 4 Business Manager Michael Langer and Business Representative Steve Morse to remind them that they had been instructed not to install or hoist any plunger/cylinder units by crane.

30.    Today, Wednesday, May 26, 2004, Local 4 Business Representative Morse showed up at the Exeter site and, before a crane even arrived, instructed the Otis employees not to install the plunger/cylinder units. At or about 7:15 a.m., Local 4 Business Representative

Morse told Mechanic Shelly Lunceford and Helper Mike Tompkins in the presence of Construction Superintendent Hogue "I am instructing you not to install the plunger and cylinder with a crane." Construction Superintendent Hogue handed Local 4 Business Representative Morse a grievance form and asked him to file a grievance and allow the employees to do their work. Business Representative Morse said "no, I am not going to file a grievance, I am instructing them not to install the plunger and cylinder with a crane."

31.    Construction Superintendent Hogue advised Local 4 Business Representative Morse that after the Exeter job, he had another job in Dover where he would direct the same crew to install a plunger and cylinder with a crane. He asked if Local 4 was going to give the same instruction. Local 4 Business Representative Morse said "absolutely, I won't allow them to install a plunger and cylinder with a crane there."

32.    At or about 7:30 a.m. on May 26, the crane arrived at the Exeter job, Construction Superintendent Hogue directed Mechanic Lunceford to install the plunger and cylinder with a crane. Mechanic Lunceford said that he would not install the plunger and cylinder with a crane.

33.    Hoisting and installation of two plunger/cylinder units has been scheduled at the Mashpee project for Wednesday morning, May 26.

34.    On Tuesday, May 25, 2004, Otis Construction Superintendent Cummings informed Mechanic Dave Nicholson and Apprentice Chris Martin that they would be hoisting and installing the two plunger/cylinder units at the Mashpee job site on Wednesday morning, May 26.

35.     Mechanic Nicholson called the work into the Local 4 business office.  Business Representative Morse told mechanic Nicholson that he and Apprentice Martin were not to install the plunger/cylinder units by crane.

36.     On Wednesday, May 26, 2004, at or about 7:30 a.m. Construction Superintendent Cummings informed Mechanic Nicholson and Apprentice Martin that he would direct them to install the plungers and cylinders by crane.  Mechanic Nicholson called the Local 4 business office.  Shortly thereafter, Mechanic Nicholson called Construction Superintendent Cummings and stated that Local 4 instructed him not to install the plungers and cylinders and that the employees would follow Local 4's instructions.

37.     The Otis Agreement's grievance and arbitration procedure applies to work jurisdiction disputes including disputes over what work will be performed and how it will be performed.  The Otis Agreement provides that:

> "While any question or dispute pertaining to Article IV or Article IV(A) is being processed the Company, where possible, shall assign the employees work other than the work in dispute.  Where the work has progressed to a point where it is not possible to perform work other than the work in dispute, then the employee shall perform the disputed work pending final resolution as provided herein."

Art. IV, Par. 11.

38.     At the four projects at issue, installing the plungers and cylinders is a necessary next step and there is no other work for the Otis employees to be done at those projects until the plunger and cylinder units are installed.

39.     Local 4 has instructed its members, including Otis employees, not to install the plungers and cylinders.

40.     This dispute is subject to arbitration pursuant to Article IV, Par. 11(a) and Article XV, Par. 1 of the Otis Agreement.

DOWNS
RACHLIN
MARTIN PLLC

41.    The work stoppage is in violation of Article IV, Par. 11(b) and Article XIV of the Otis Agreement and is illegal.

42.    If Local 4 continues to interfere with Otis' ability to install plungers and cylinders at the job sites described above, Otis will be unable to fulfill its contractual obligations in a timely manner.

43.    The unlawful acts specified herein were committed by Local 4 acting through its agents and members.

44.    Otis has demanded that Local 4 cease its illegal work stoppage and comply with the Otis Agreement, but the Union has refused.

45.    The Defendants' coercive actions are in deliberate willful and calculated violation of the Otis Agreement in disregard of the arbitration process.

46.    Upon information and belief, unless restrained by order of this Court, the concerted refusal to work by the employees represented by Defendants in violation of the Otis Agreement will continue.

## THE IRREPARABLE HARM RESULTING FROM THE UNLAWFUL WORK STOPPAGE

47.    With respect to the three projects under Construction Superintendent Hogue's supervision, Otis has cranes on all three jobsites now that are or were prepared to proceed with installations on Wednesday, May 26, 2004.

48.    With respect to the Exeter site, if Otis is not allowed to do the installation on Wednesday as scheduled, Otis will be forced to unload the plunger/cylinder unit from the delivery truck, and the construction contractor will have to store it on site. Otis will later have to re-hire another crane to do the installation. Because the Exeter building is a five-story building, the crane to be rented later will be more expensive than the one that is onsite now, because the

DOWNS
RACHLIN
MARTIN PLLC

10

building construction will be further along, requiring Otis to hire a crane with a higher "stick" to reach up over the higher frame.

49.     In addition, Otis' reputation with the contractor at the Exeter job, Sterling, for timely and reliable elevator installations will be damaged. This installation Local 4 is preventing from proceeding is at the second of eight buildings at the site, and Otis' ability to win the elevator installation bid on the remaining buildings (and thereby hire Local 4 members to do the work) will be jeopardized if this installation is delayed because of the Local 4 work stoppage.

50.     With respect to the Dover project, the situation is even more urgent. The frame of the four-story building is complete, and work at the site is being delayed because of the hole in the top of the building that is being left open to allow the plunger/cylinder unit to be lowered in from the top. Interior work by other trades inside the building cannot be done until the hole in the top of the building is closed.

51.     If the plunger/cylinder unit is not installed on Wednesday as scheduled, the schedule for the Dover project will be severely impacted and Otis' relationship with its customer, Millstone, will be irreparably damaged. Otis reasonably expects to do business with Millstone in the future, but that prospect will be jeopardized by this work stoppage.

52.     Similarly, with respect to the Falmouth project, the construction contractor Pochebit is just starting work on the third story of this four-story building. Otis has arranged for a crane to be there on Wednesday, May 26, to unload the plunger/cylinder unit from the delivery truck in the afternoon and lower it into the wellhole. If Otis is unable to do the installation on Wednesday due to the work-stoppage, it will have to hire a crane again later at greater expense, and Otis' reputation with Pochebit will be severely, if not irreparably damaged. It is Otis' expectation to do work for Pochebit in the future.

53.     With respect to the Mashpee project in Massachusetts under Construction Superintendent Cummings' supervision, a crane has been hired for a half-day at a cost of $600-$800 for Wednesday, May 26 for the express purpose of hoisting and installing the two plunger/cylinder units at issue. Local 4's unlawful work stoppage has jeopardized Otis' goodwill and reputation with Mashpee project contractor Raleigh.

54.     There is no method for calculating the damage cased by Local 4's work stoppage.

55.     As a result of Local 4's directive, elevator construction work at the four projects described above has come to a complete standstill. Otis has been unable to proceed with construction at the projects in a timely manner. Otis has completed all other work that can be performed at this time other than the work that Local 4 is directing employees to refuse to perform.

56.     Local 4's refusal to work is preventing Otis from fulfilling its contractual obligations and jeopardizing Otis' relationship with the construction contractors on the four projects. Otis vies with several other elevator and escalator manufacturers in an extremely competitive market for construction contracts. Timely completion of construction contracts is often one of the most important factors in determining whether Otis is awarded subsequent contracts.

57.     Unless the relief sought herein is granted, substantial and irreparable injury to Otis and its customers will follow. The unlawful work stoppage is preventing Otis from fulfilling its contractual obligations and threatening Otis's reputation and good will with customers.

58.     Otis has no adequate remedy at law for the injuries caused and threatened by Defendants' illegal conduct.

DOWNS
RACHLIN
MARTIN PLLC

12

59.    Unless Defendants are enjoined from their illegal and unlawful acts, and are ordered to resume performance of work, such actions will continue to cause immediate, substantial, and irreparable harm to Otis, the amount of which cannot be definitely ascertained, in that:

a)    Otis has been and will be unable to render adequate performance of its contractual obligations to construct elevators; and

b)    Otis will suffer temporary and permanent loss of business as a result of damage to its good will and reputation in the industry and its commercial relationships as a result of which its ability to bid on future jobs will be impaired;

60.    The effect on the Defendants, if injunctive relief is granted, is less onerous than the harm that will be suffered by Otis and its customers if the injunction is not granted.

61.    Otis has complied with all obligations imposed by law that are involved in this labor dispute.

62.    Otis has made every reasonable effort to settle this labor dispute.

63.    No prior application for the specific relief herein sought by Otis or for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiff, Otis Elevator Company demands judgment:

I.    Granting Plaintiff a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants, their officers, agents, representatives, members, employees and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Complaint, from in any manner or by any means:

DOWNS
RACHLIN
MARTIN PLLC

13

A)    calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, work stoppage, work slowdown, sit-down, or any other refusal to work or act of coercion or interference with Plaintiff's normal operations;

B)    by Union discipline, penalty or otherwise, interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiff in the course of any such employee's or agent's work for Plaintiff;

C)    by threats or otherwise, interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiff's operation, and from taking any action which would interfere with this Court's jurisdiction in the premises;

D)    causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiff's normal operations prior to the hearing on Plaintiff's application for a preliminary injunction;

II.    Directing Defendants to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 4, and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of Defendants, and all those in active concert with them; requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendants; and rescinding any oral or written notices, orders, directions, or requests to employees of Plaintiff authorizing, directing, inducing or encouraging any strike, slow-down, work stoppage, refusal to work, or other limitation upon production;

III.    Directing Defendants together with Plaintiff forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiff and Defendants, the present dispute; and

IV.     Granting such other and further relief to which Plaintiff may be entitled, including damages, costs and disbursements of the action.

May 26, 2004                              Respectfully submitted,

                                          _____
                                          Timothy E. Copeland Jr.
                                          Peter B. Robb
                                          Walter E. Judge, Jr.
                                          (Mass. BBO No. 556650)
                                          DOWNS RACHLIN MARTIN PLLC
                                          80 Linden Street
                                          PO Box 9
                                          Brattleboro, VT  05302-00009
                                          Telephone: 802-258-3070
                                          Fax:  802-258-2286
                                          E-mail:  tcopeland@drm.com

                                          and

                                          _____
                                          Nathan L. Kaitz (BBO# 256760)
                                          Morgan, Brown & Joy, LLP
                                          One Boston Place
                                          Boston, MA  02108
                                          T.  (617) 523-6666
                                          F.  (617) 367-3125
                                          E-mail nkaitz@morganbrown.com

DOWNS
RACHLIN
MARTIN PLLC

STATE OF MASSACHUSETTS
COUNTY OF _Suffolk_____

    David Powilatis hereby certifies as follows:

    I am the Manager of Labor Relations for Otis Elevator Company; I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are false, I am subject to punishment.

_5/26/04_____                             _____
Date                                  David Powilatis


STATE OF MASSACHUSETTS
_Suffolk_____ COUNTY, SS.

    At _Boston_, Massachusetts, this _26th_ day of May 2004, David Powilatis, personally appeared, gave oath to the truth of the foregoing, and he acknowledged this instrument, by him sealed and subscribed, to be his free act and deed.

                            Before me _____
                                   Notary Public
                                   Commission Expires: _02/10/07_ 7-2-10

BTV.267293.2

DOWNS
RACHLIN
MARTIN PLLC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Otis Elevator Co. v. Local 4, IUEC, et al.

FILED
IN CLERKS OFFICE

2004 MAY 26 P 12: 22

U.S. DISTRICT COURT
DISTRICT OF MASS.

04 11108 JLT

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

- [ ] I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
- [X] II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
- [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
- [ ] IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
- [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
YES [ ]   NO [X]
If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES [X]   NO [ ]
   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division [X]   Central Division [ ]   Western Division [ ]
   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Nathan L. Kaitz, Morgan, Brown & Joy, LLP
ADDRESS  One Boston Place, Boston, MA  02108
TELEPHONE NO.  (617) 523-6666

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Otis Elevator Company

**DEFENDANTS**

2004 MAY 26 P 12: 22 International Union of Elevator Constructors; Michael Langer; and Kevin McGettigan and Steve Morse

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

04 11108

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Morgan, Brown & Joy LLP
One Boston Place
Boston, MA 02108

Attorneys (If Known)

Segal, Roitman and Coleman
11 Beacon Street
Boston, MA 02108

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☒ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

| | | |
|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court |
| ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Interpretation of collective bargaining agreement pursuant to Labor Management Act, 29 U.S.C. Sec. 141, et seq., and temporary restraining order.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ injunction & temporary restraining order

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE Tauro - however, hearing on restraining order conducted by Judge Stearns

DOCKET NUMBER 04-10966-JLT

DATE May 26, 2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|