FILED
IN CLERKS OFFICE
2004 MAY 26 P 12: 22
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY<br>Plaintiff;<br><br>v.<br><br>LOCAL 4, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; MICHAEL LANGER, INDIVIDUALLY, and as BUSINESS MANAGER; KEVIN McGETTIGAN, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; STEVE MORSE, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf,<br><br>Defendants. | Docket No.<br><br>04 11108 JLT<br><br>May 26, 2004 |

**MEMORANDUM OF PLAINTIFF, OTIS ELEVATOR COMPANY, IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION**

This memorandum is submitted by Plaintiff, Otis Elevator Company (hereafter "Otis" or the "Company"), in support of its application for a temporary restraining order, order to arbitrate and preliminary injunction pursuant to Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). The Company asks this Court to enjoin the Defendant Local 4, International Union of Elevator Constructors ("Local 4"), its officers, agents, representatives and members from continuing or engaging in, or threatening to engage in, any strike, work stoppage, refusal to work, slowdown, sit-down or sabotage against the Company and, further, to order the parties to arbitrate the dispute which exists between them.

DOWNS
RACHLIN
MARTIN PLLC

The underlying dispute – the use of cranes to hoist and install plunger/cylinder units – is clearly arbitrable under the collective-bargaining agreement in effect between the Company and the Union. Indeed, Local 4 has filed at least one grievance over the use of cranes to hoist plunger/cylinder units in the past. In this instance, however, Local 4 is refusing arbitration and decided instead to stage an unlawful work stoppage. The conduct of the Union and the other Defendants breaches the express provisions of the no-strike clause contained in the applicable collective-bargaining agreement and is causing Otis irreparable injury. This Court should, therefore, enjoin the Defendants from violating the Otis Agreement and order the parties to arbitrate pursuant to their Agreement.

## I. INTRODUCTION

### A. The Parties and Their Bargaining Relationship

The Company is engaged in the business of constructing, modernizing, repairing and servicing elevators and escalators throughout the United States. The International Union of Elevator Constructors (the "IUEC") represents elevator constructor Mechanics, Helpers, and Apprentices employed by Otis; IUEC Local 4 ("Local 4") represents elevator constructor Mechanics, Helpers, and Apprentices employed by Otis in the Boston, Massachusetts area.

Since 1987, Otis has entered into a series of five-year collective-bargaining agreements with the IUEC, "for and on behalf of its affiliated local unions . . . ." The most recent agreement between Otis and the IUEC became effective on July 9, 2002, and will remain in full force and effect through July 8, 2007 (the "Otis Agreement").[1] The Otis Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers and Apprentices employed by Otis throughout the United States (except New York City and Vicinity which is covered by a separate agreement with IUEC Local 1).

[1] A copy of the Otis Agreement is attached as Exhibit A to the Verified Complaint.

The Otis Agreement expressly prohibits strikes and concerted refusals to work during the term of the Otis Agreement (Article XIV, Paragraph 1), and provides that any difference or dispute regarding the application and construction of the Otis Agreement shall be resolved under the Otis Agreement's grievance and arbitration procedures (Article XVI).[2]

**B. The Current Dispute**

Otis has long enjoyed success in securing contracts to install hydraulic elevators. Currently such contract include the following:

1. a contract with S.V. Raleigh for Flagship Storage in Mashpee, Massachusetts (the "Mashpee job");

2. a contract with KAR Delivers for the Inn at Sterling Hill, Exeter, New Hampshire (the "Exeter job");

3. a contract with Paolini Brothers for Millstone Apartments in Dover, New Hampshire (the "Dover job"); and

4. a contract with Pochebit for the Inn at Hilltop in Falmouth, Maine.

Verified Complaint ¶ 17.

A dispute has arisen between Otis and Local 4 concerning the use of cranes to hoist and install plungers and cylinders. Article IV, Paragraph 5(a) of the Otis Agreement provides as follows:

> Where heavy material is to be hosted or lowered outside of the structure, a derrick, crane or material host can be used under the supervision of the Elevator Constructors in the employ of the Company. Heavy material under subparagraph (a) is confine to

[2] Significantly, the Otis Agreement is substantially the same as the Standard Agreement and the Local One Agreement at issue in two cases cited in Section II of this Memorandum: (1) National Elevator Indus., Inc. v. International Union of Elevator Constructors, AFL-CIO, 776 F.2d 374, 376-77 (1st Cir. 1985); and (2) Elevator Mfrs. Ass'n v. International Union of Elevator Constructors, 342 F. Supp. 372, 373 (S.D.N.Y. 1972). In both decisions, the employer successfully obtained an injunction against an illegal work stoppage. Otis was a member of the National Elevator Industry Inc. ("NEII") and Elevator Manufacturers Association of New York multi-employer associations until 1987.

Superintendent Cummings told an Otis mechanic that he and his apprentice would be installing and hoisting a plunger/cylinder unit at the Mashpee job site the next day.

On the morning of May 26th, Construction Superintendent Cummings again directed employees at the Mashpee job to hoist a plunger/cylinder unit using a crane brought to the site especially for that purpose. The employees refused and reported they were doing so at the direction of Local 4.

Local 4's directives spread to other Otis job sites. Local 4 Business Representative Morse advised Otis Construction Superintendent Hogue that he would personally appear at a job site in Exeter, New Hampshire to ensure that Local 4 members were not installing plunger/cylinder units as directed by Otis. Otis employees/Local 4 members at jobsites in Falmouth, Maine and Dover, New Hampshire also refused directions to hoist plunger/cylinder units. As a result of Local 4's conduct, Otis's work at four job sites in Local 4's jurisdiction has come to a complete standstill.

## II. ARGUMENT

### A. This Court Has Jurisdiction To Enjoin Defendants' Violation Of The No-Strike Clause And To Order The Parties To Arbitrate

This Court has jurisdiction, pursuant to Section 301(a), Labor-Management Relations Act, 29 U.S.C. § 185(a) (1970), to issue a temporary restraining order, a preliminary injunction, and to order the parties to arbitrate. Section 301(a) provides:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970), the United States Supreme Court, overruling its earlier decision in Sinclair Refining Co. v. Atkinson, 370 U.S. 195 (1962), held that a federal court may enjoin a strike which is in breach of a no-strike clause where the strike is over a grievance which is arbitrable under the collective-bargaining agreement. The Court specifically held that the Norris-LaGuardia Act does not preclude the issuance of an injunction in this situation. The Court reasoned that national labor policy would be furthered if the parties submitted their dispute to the mutually agreed upon procedures set forth in the collective-bargaining agreement. Specifically, the Court held:

> The Sinclair decision, however, seriously undermined the effectiveness of the arbitration technique as a method peacefully to resolve industrial disputes without resort to strikes, lockouts, and similar devices. Clearly employers will be wary of assuming obligations to arbitrate specifically enforceable against them when no similarly efficacious remedy is available to enforce the concomitant undertaking of the union to refrain from striking. On the other hand, the central purpose of the Norris-LaGuardia Act to foster the growth and viability of labor organizations is hardly retarded - if anything, this goal is advanced - by a remedial device that merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration.

398 U.S. at 252-53.

The Supreme Court established four prerequisites for obtaining an injunction against a strike or threatened strike in violation of a collective-bargaining agreement:

1. There must be a collective-bargaining agreement presently in effect between the parties;

2. The strike or threatened strike must be in breach of a no-strike obligation under said agreement;

3. The strike must be over a grievance which both parties are contractually bound to arbitrate; and

4. The injunction must be warranted under ordinary principles of equity.

398 U.S. at 254. Each of these conditions is met in the instant case. See National Elevator Indus., Inc. v. International Union of Elevator Constructors, 776 F.2d 374, 377-79 (1st Cir. 1985) (granting Boys Markets injunction in a case involving Local 4); see also, Anheuser-Busch, Inc. v. Teamsters Local No. 633, 511 F.2d 1097, 1099 (1st Cir. 1975).

1. There Is A Collective-Bargaining Agreement Between The Company And The Union That Contains Mandatory Grievance And Arbitration Procedures

There is no question in this case that Otis and the Unions are parties to a collective-bargaining agreement that contains mandatory grievance and arbitration procedures. (Verified Complaint Exh. A).

2. The Union Has Breached The No-Strike Provision In The Collective-Bargaining Agreement

The Union's order that Otis employees refuse to hoist and install plunger/cylinder units as directed by Otis constitutes a strike that violates the Agreement's clear and unambiguous no-strike clause. Article XIV, the "No Strike or Lockout" provision of the Agreement, reads in pertinent part:

> It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party.

It is beyond serious dispute that employees' refusals to work at the numerous job sites in Local 4's jurisdiction is the result of an order from Local 4 and the Union has initiated, authorized and/or ratified after the fact, the unlawful work stoppage in furtherance of its position regarding the use of cranes to hoist and lower plungers and cylinders, a dispute which Otis and the Unions are bound to arbitrate pursuant to Article XV of the Agreement. Indeed, Local 4 officials have candidly admitted to Otis Superintendents that they were directing employees to refuse to hoist plunger/cylinder units, and personally appearing at job sites to monitor

compliance with their directives. Local 4's actions clearly constitute a strike that breaches the no-strike clause. The First Circuit agrees. National Elevator Indus., Inc. v. International Union of Elevator Constructors, 776 F.2d 374, 378 (1st Cir. 1985) (citing Elevator Mfrs. Ass'n of New York, Inc. v. Local 1 International Union of Elevator Constructors, 689 F.2d 382, 386 (2d. Cir. 1982)). See also Delta Elevator Servs. v. IUEC, Local 4 et al., Docket No. 02-12145DPW (November 1, 2002) (TRO issued by Judge Douglas P. Woodlock for illegal refusal to take calls at lunch) (copy attached); Otis Elevator Co. v. IUEC Local 4, No 04-10916-JLT (order to Arbitrate and Restraining Order issued by Judge Stearns over Local 4's refusal to install elevator doors).

3. The Strike Is Over A Dispute That The Union And Otis Are Required To Arbitrate

The parties are bound by the Otis Agreement to arbitrate the underlying work jurisdiction dispute. Article XV contains comprehensive arbitration procedures for the settlement of "any difference or dispute regarding the application and construction of the Agreement" (emphasis added). Article IV establishes work that Mechanics and Helpers must perform, and expressly provides that disputes over Article IV must be processed under the grievance and arbitration procedure. The current dispute over the Local 4's objections to direction by Otis to install plunder/cylinder units is a "difference or dispute regarding the application and construction" of Article IV of the Agreement and, thus, subject to the mandatory grievance and arbitration procedures contained in Article XV. Indeed, Local 4 has already filed (and abandoned) a grievance on the issue.

4. The Fourth Requirement Of Boys Markets, The Justification Of Injunctive Relief On The Basis Of Ordinary Principles Of Equity, Is Also Met

In Boys Markets, the Court cautioned lower courts not to grant injunctive relief unless the alleged contract breach has "caused or will cause irreparable injury to the employer; and . . . the employer will suffer more from the denial of an injunction than will the union from its issuance." Boys Markets, 398 U.S. at 235. Otis plainly meets this threshold.

A variety of factors have been held to constitute irreparable harm for purposes of a Boys Markets injunction. Where, as here, a work stoppage prevents an employer from performing contracts by required completion dates, the employer suffers irreparable harm. Elevator Mfrs. Ass'n v. International Union of Elevator Constructors, 342 F. Supp. 372, 373 (S.D.N.Y. 1972). Findings of irreparable harm have also been made where the unlawful strike has caused operations to be shut down or production to be interrupted. See Otis Elevator Co. v. Local 1, IUEC, 684 F. Supp. 80, 80-82 (S.D.N.Y. 1988)("work stoppages are likely to damage plaintiff's business irreparably," including "lost goodwill" and "permanent loss of business"); Elevator Mfrs .Ass'n of New York v. Loc. 1, IUEC, 689 F.2d 382, 386 (2d Cir. 1982). Findings of irreparable harm have also been made where the unlawful strike has caused operations to be shut down or production interrupted. See Gallagher Asphalt Corp. v. International Union of Operating Eng'rs, Local 150, 967 F. Supp. 333, 337 (N.D. Ill. 1997) (irreparable injury found where work stoppage brought construction project to a halt); U.S. Steel Corp. v. United Mine Workers, 534 F.2d 1063, 1979 (3d Cir. 1976); Hilton Int'l Co. v. Asociacion De Empleados De Casino De Puerto Rico, 324 F. Supp. 492, 494 (D.P.R. 1971).

Similarly, where, as here, a work stoppage prevents employers from performing contracts, the resulting loss of business and consequent damage to the employer's reputation has been held to constitute irreparable harm. National Elevator Indus. Inc. v. IUEC, 776 F.2d 374,

378 (1st Cir. 1985) (irreparable harm shown where work stoppage resulted in damage to reputation); Gallagher Asphalt Corp., 967 F. Supp. at 337 (irreparable harm where work stoppage is likely to continue at great economic harm to employer); Airborne Freight Corp. v. International Bhd. of Teamsters, Local 705, 216 F. Supp. 2d 712 (N.D. Ill. 2002) (irreparable injury could be shown by loss of reputation and good will caused by the work stoppage); Elevator Mfrs. Ass'n, 342 F. Supp. at 373 (injunction issued when employer alleged that work stoppage will prevent performance of contracts by required completion dates); Ciba-Geigy Corp. v. Local No. 2548, United Textile Workers of America, AFL-CIO, 391 F. Supp. 287, 293 (D.R.I. 1975) (irreparable harm where work stoppage is likely to continue at great economic harm to employer); Educational and Recreational Servs., Inc. v. United Steelworkers of America, Local 8751, 1980 WL 2165 at *3 (D. Mass. October 29, 1980) (contractual liabilities for money damages for terminating underlying contract together with the difficultly of ascertaining damages amounted to irreparable harm).

The current work stoppage has caused and continues to cause irreparable damage to the Company's goodwill, reputation and commercial relationships within the industry. Otis has a contractual obligation to complete installation of elevators at the Mashpee, Falmouth, Exeter, and Dover job sites in a timely manner. Local 4's interference with Otis' operations is already threatening Otis' ability to timely complete construction work on at these job sites. Local 4's declared intention to refuse to install plunger/cylinder units wherever directed by Otis to do so threatens Otis's operations at untold numbers of future sites.

Thus, unless the relief sought herein is granted, substantial and irreparable injury to Otis, its customers, the property owners, and other third parties will follow. The unlawful work

stoppage is preventing Otis from fulfilling its contractual obligations and threatening Otis's reputation and good will with customers

Finally, the balance of harms decidedly tips in Otis' favor. The Company has followed all of its contractual obligations in good faith and will suffer severe damage and loss of goodwill if this Court fails to grant the requested injunctive relief. Conversely, interim equitable relief in favor of the Company will cause the Union no injury whatsoever. The Union merely will be "held to its agreement to arbitrate this dispute without recourse to a work stoppage." New York Times Co. v. NMDU, 592 F. Supp. 1043, 1051 (S.D.N.Y. 1984). The arbitrator can provide an appropriate remedy for any contractual violations. Clearly, "[t]he effect on the [U]nion if [injunctive relief] is granted is less onerous than the harm which [will] be suffered by the [Company] if the injunction is not granted." Boys Markets, 398 U.S. at 235; see also National Elevator Indus., 776 F.2d at 378 (neither the union nor individual defendants suffered harm as a result of the injunction).

Since all of the requirements for equitable relief have been satisfied in this case, this Court should enjoin the Defendants' activities. These activities violate the no-strike clause in the Otis Agreement, concern a grievance that the parties are bound to arbitrate and are causing irreparable harm to Otis.

## III. CONCLUSION

For all of the foregoing reasons, this Court should enjoin Defendants from violating the collective-bargaining agreement, order the parties to arbitrate pursuant to said Agreement, and order other relief as requested in the Complaint.

Respectfully submitted,

Dated at Boston, Massachusetts
May 26, 2004

MORGAN BROWN & JOY, LLP

By: ______________________

Nathan L. Kaitz
Joseph McConnell
MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, Massachusetts 02108
Telephone : (617) 523-6666
Fax : (617) 367-3125

DOWNS RACHLIN MARTIN PLLC

By: ______________________

Timothy E. Copeland Jr., Esq.
DOWNS RACHLIN MARTIN PLLC
80 Linden Street
PO Box 9
Brattleboro, VT 05302-00009
(802) 258-3070

ATTORNEYS FOR OTIS ELEVATOR COMPANY

BTV.267325.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2002 NOV -1 P 2:13
U.S. DISTRICT COURT
DISTRICT OF MASS.

DELTA ELEVATOR SERVICES CORPORATION d/b/a DELTA BECKWITH ELEVATOR COMPANY
Plaintiff;

v.

LOCAL 4, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; MICHAEL LANGER, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE STEVE SAMPSON, INDIVIDUALLY, and as BUSINESS MANAGER; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf,

Defendants.

Docket No.

02-12145 DPW

November 1, 2002

**ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

Upon the Summons and Verified Complaint herein dated November 1, 2002 and good cause appearing therefore, it is hereby:

ORDERED that the Defendants, their officers, agents, representatives, members, employees and attorneys, and all persons in active concert or participation with them, appear before the Honorable Douglas P. Woodlock, a Judge of this Court in the United States Courthouse located at One Courthouse Way, Boston, Massachusetts on the 1st day of November at 10:00 o'clock a.m./~~p.m.~~, or as soon thereafter as counsel can be heard, to show cause why this Court should not enter an order granting Plaintiff a preliminary injunction, to be effective during the pendency of this action, for the relief sought in the Verified Complaint, pursuant to Federal Rule of Civil Procedure 65 and the Labor-Management Relations Act, 29 U.S.C. § 185; and

~~Plaintiff shall file and serve any and all supporting papers on or before 12 noon~~ November 6, 2002; and Defendants shall file and serve any and all opposing papers on or before 12 noon, November 6, 2002;

It appearing, as more fully set forth in the aforementioned Verified Complaint and Declarations, that by striking over disputes that are subject to final and binding arbitration pursuant to a collective bargaining agreement, Defendant Local 4 International Union of Elevator Constructors, and its officers, agents and representatives, and all those in concert and participation with them, have violated such collective bargaining agreement and have substantially impeded and interfered with the Plaintiff's ability to fulfill its contractual obligations to respond to service calls including calls for emergency service with immediate, substantial, and irreparable injury, loss and damage to:

a. Plaintiff by preventing said company from fulfilling its contractual obligations, exposing the company to potential termination of favorable contractual relationships and loss of reputation and good will with its customers;

b. Plaintiff's customers; and

c. members of the public;

And it further appearing to the Court from the Verified Complaint and Declarations above-mentioned, that a temporary restraining order preliminary to the hearing upon Plaintiff's application for a preliminary injunction should issue because of the unlawful acts alleged; that such unlawful acts by Defendants have already occurred and are openly threatened to continue; that such unlawful acts will likely continue to occur prior to said hearing date unless restrained by an order by this Court; that such acts have caused and will continue to cause immediate and irreparable loss or damage to the Plaintiff before the hearing can be held on Plaintiff's application for a preliminary injunction; in that said acts have and will continue to seriously

disrupt Plaintiff's business, cause Plaintiff to fail to meet business commitments, caused Plaintiff to fail to fulfill its contractual obligations to respond to service calls in a timely manner, and cause substantial damage to Plaintiff's business and reputation; that damages to Plaintiff and others resulting from such unlawful acts cannot be fully estimated or compensated in money, and that because thereof, the damages which Plaintiff will so sustain will be immediate, substantial, and irreparable for which Plaintiff has no adequate remedy at law; and Plaintiff having made no previous application for the relief requested herein, it is hereby:

ORDERED that pending the determination of this application for a preliminary injunction or for a period not to exceed _____ days or until the 7th day of November at 5 o'clock ~~a.m.~~/p.m., or as soon thereafter as counsel can be heard, unless this order be dissolved prior thereto or extended, then or thereafter, whichever is sooner:

Defendants, their officers, agents, representatives, members, employees and attorneys, and all persons in active concert or participation with them having notice from any source or in any manner of the entry of this order be and hereby are enjoined and

(1) restrained from calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, concerted work stoppage, concerted work slow down, sit-down or any other act of coercion or interference with Plaintiff's normal operations including but not limited to disabling communications devices or otherwise refusing to respond to service calls;

(2) by Union discipline, penalty or otherwise restrained from interfering with or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiff in the course of any such employee's or agent's work for Plaintiff;

(3) by threats or otherwise, restrained from interfering with or inducing or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiff's business and from taking any action which would interfere with this Court's jurisdiction in the premises;

(4) restrained from causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiff's normal operations prior to the hearing of Plaintiff's application for a preliminary injunction;

(5) directed to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 4 International Union of Elevator Constructors ("Local 4") and the issuance forthwith of appropriate notices or other communications to the members, officers and agents of Defendants, and all those in active concert with them, requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendant Local 4 and rescinding any oral or written notices, orders, directions, or requests to employees of Plaintiff authorizing, directing, inducing or encouraging any strike, slow down, work stoppage or other limitation upon production; and

~~(6) directed, together with Plaintiff, forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiff and Defendants, the present dispute between them regarding holiday pay.~~

And, it is hereby further ordered, that Plaintiffs shall post a bond in the amount of $ 5,000, conditioned as required by law, no later than noon, November 4, 2000 ~~at ____ o'clock a.m./p.m.~~

And, it is hereby further ordered, pursuant to Rule 6(d) of the Federal Rules of Civil Procedure that service of this Order to Show Cause and Temporary Restraining Order and a copy of the papers upon which they are granted, if made on or before _____ o'clock a.m./p.m. on [month/day/year] shall be deemed sufficient service thereof.

November 1, 2000 3:30 p.m.
Date Time

Douglas P. Woodlock
Presiding Judge

BRT/42544.1

Counsel for the defendants has agreed to accept service.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10966-JLT

OTIS ELEVATOR COMPANY

v.

LOCAL 4, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; MICHAEL LANGER, INDIVIDUALLY, and as BUSINESS MANAGER; KEVIN MCGETTIGAN, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; STEVE MORSE, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf

ORDER TO ARBITRATE AND RESTRAINING ORDER

May 19, 2004

STEARNS, D.J.

After a hearing on Plaintiff Otis Elevator Company's (Otis) Verified Complaint and Motion for Temporary Restraining Order, the Court ORDERS as follows:

1. Otis and Defendant Local 4, International Union of Elevator Constructors (Union) will arbitrate their dispute over whether the elevator car and hoistway doors at the Bentley College jobsite that gave rise to this dispute fall within Appendix A, Paragraph 5, of the collective bargaining agreement between Otis and the International Union of Elevator Constructors.

2. Otis shall post a bond in the amount of $10,000, conditioned as required by law, no later than May 21, 2004.

3. Otis shall pay into a court-held escrow account $1,000, said sum to be applied

to any award made by the arbitrator on behalf of the Union, or shall be returned to Otis should the arbitrator rule in Otis's favor.

4. Pending resolution of all issues deemed by the arbitrator to be related to the dispute over the installation of the elevator car doors, including any issues that involve claims for back pay, and in the exercise of such jurisdiction as is deemed by the arbitrator to be conferred by the collective bargaining agreement, Local 4 of the Union, its officers, agents, representatives, and members are, consistent with the provisions of Article XIV of the collective bargaining agreement, enjoyed and restrained from calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, concerted work stoppage, concerted work slow down, sit-down or refusal to work, or any other act of coercion or interference with Otis's normal operations. The officers and agents of Local 4 of the Union are charged with notice of this Order.

SO ORDERED.

Richard G. Stearns

UNITED STATES DISTRICT JUDGE

Date: 5-19-04.

Time: 9:48 AM