UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. |
| ) | |
| LOCAL 4, INTERNATIONAL UNION ) | |
| OF ELEVATOR CONSTRUCTORS; ) | |
| MICHAEL LANGER, INDIVIDUALLY, and as ) | |
| BUSINESS MANAGER; KEVIN McGETTIGAN, ) | |
| INDIVIDUALLY, and as BUSINESS ) | |
| REPRESENTATIVE; STEVE MORSE, ) | |
| INDIVIDUALLY, and as BUSINESS ) | |
| REPRESENTATIVE, and all others ) | |
| conspiring, acting in concert or otherwise ) | |
| participating with them or acting in their aid ) | |
| or behalf. ) | |
| ) | |
| Defendants. ) | |

FILED IN CLERKS OFFICE
2004 MAY 26  P 12: 22
U.S. DISTRICT COURT
DISTRICT OF MASS.

## DECLARATION OF RICHARD HOGUE

Richard (Dick) Hogue, being duly sworn, deposes and says as follows:

1.   I am employed by Otis Elevator Company ("Otis"). I am the Otis Construction Superintendent for three projects currently underway in New Hampshire and Maine involving the installation of Otis elevators.

2.   Otis is engaged in the business of selling, installing, and servicing elevators and escalators throughout the United States, including New Hampshire and Maine. In cases of new construction, such as the elevators that are at issue here, Otis contracts with the general construction contractor to provide the material and labor and complete installation services for elevators.

3.   Otis has a collective-bargaining agreement with the International Union of Elevator Constructors ("IUEC") (the "Otis Agreement") for and on behalf of its local unions,

including IUEC Local 4, ("Local 4"), which represents Otis' employees in parts of Massachusetts, New Hampshire and Maine. For a further explanation of the Otis Agreement, and its relationship to this dispute, I refer to the declaration of David Powilatis.

4. As Construction Superintendent for Otis, I currently have overall responsibility for insuring that Otis satisfactorily completes its agreements for installing elevators at: a) the Inn at Sterling Hill, in Exeter, New Hampshire (the "Exeter project"); b) the Millstone Apartments, in Dover, New Hampshire (the "Dover project"); and c) the Inn at Hilltop, in Falmouth, Maine (the "Falmouth project").

5. On the Exeter project, Otis has a construction agreement with Sterling Hill Development, LLC ("Sterling") to install a five-story hydraulic elevator. On the Dover project, Otis has a construction agreement with Millstone Properties ("Millstone") to install a four-story hydraulic elevator. On the Falmouth project, Otis has a construction agreement with Pochebit Company ("Pochebit") to install a four-story hydraulic elevator.

6. All of these projects are time-sensitive. All of these projects involve agreements with construction contractors with whom Otis hopes to do business in the future. Otis' current and future customer relationships will be severely damaged if the elevator installations are not completed on a timely basis.

7. A dispute has recently arisen between Otis and Local 4 involving "plunger and cylinder installation." This dispute has resulted in a work stoppage by Otis' employees on these projects.

8. In a hydraulic elevator, the plunger (also known as the "piston") and cylinder unit sits in the "wellhole" (the wellhole is at the bottom of the elevator shaft) in a metal tube ("casing") that is inserted into the ground. Through hydraulic pressure, the plunger rises upward out of the cylinder and pushes the elevator car upward. Under Otis's general installation

methods, the heavy plunger and cylinder units are delivered to the jobsite pre-assembled on flatbed trucks when the construction of the building has just begun and a foundation is complete. Pursuant to Otis's general installation method, the plunger and cylinder are then hoisted by crane and lowered into the wellhole.

9. Local 4 agents, IUEC Business Manager Michael Langer and IUEC Local 4 Business Representatives Kevin McGettigan and Steve Morse, claim that the plungers and cylinder units cannot be hoisted and lowered into the wellhole with a crane. Instead, IUEC Business Manager Langer, and Local 4 Business Representatives McGettigan and Morse insist that the units must be installed after the building is almost complete by using rigging or hoists (a "chain fall") inside the hoistway to hoist and lower the plunger and cylinder. According to Business Manager Langer and Business Representatives McGettigan and Morse, if Otis uses a crane to install the plunger and cylinder, then Otis must allow Local 4's members to later use a chain fall to remove the piston and reinstall it.

10. There is absolutely no benefit to performing the plunger and cylinder unit installation in the manner insisted upon by Local 4. On the contrary, having the workers manually re-lift the heavy unit with a chain fall, once it is already sitting in the wellhole, involves unnecessary physical safety risks, as well as delay and expense. Also, there is no reasonable basis to require installation with a chain fall after a structure is built as demanded by Local 4. The only reason to object to the crane method is to create additional, unnecessary work for the Union members.

11. I have been involved in the installation of hydraulic elevators for approximately 30 years – many of those years with employees of IUEC Local 4 – and this insistence that the plunger and cylinder installation has to be done (or redone) using a chain fall is new. In fact, within the last year, I have supervised the installation of approximately 50 to 60 hydraulic

3

elevators employing the method of installing the plunger and cylinder unit with a crane, and these installations have been performed by the same Local 4 members who now say that they have been instructed by Local 4 not to perform the installation at all unless Otis agrees to extra tasks described above. Indeed, the Exeter project described above is the second of an eight-building project at the same site, and Otis has already installed one elevator at this site using the same crane-only installation method, by the same Local 4 union members, who are now prohibited from doing it.

12. On Wednesday, May 5, 2004, I instructed Otis Mechanic Kevin McAvoy to install two plunger/cylinder units on a jobsite in Portland, Maine. In customary fashion, Mechanic McAvoy called the job in to Local 4 before starting. An agent of Local 4 called Mechanic McAvoy back shortly thereafter and advised him not to perform the installation if it was to be done in a single, crane-only step, as described above. Mechanic McAvoy was uncertain as to this guidance, so he called Local 4 back and was again advised not to perform the installation in a single, crane-only step, and was vaguely referred for guidance to the work-jurisdiction rules in the Otis Agreement. Mechanic McAvoy had always done the installations with a single crane left, and asked other Local 4 members he knew for their understanding of Local 4's position. Eventually Mechanic McAvoy and Helper Scott Melcher went ahead and did the installation in the single, crane-only step, per my instructions. The next day Mechanic McAvoy received a call from IUEC Business Manager Langer and was asked what he had done. Mechanic McAvoy explained that he had in fact performed the installation. IUEC Business Manager Langer was upset, told Mechanic McAvoy that he was going to have to "get educated," and hung up on him.

13. On Monday, May 24, 2004, I had occasion to call Local 4 Business Representative McGettigan on an unrelated matter. Mr. McGettigan eventually asked me if I had

any plunger/cylinder units to install. I said that I did, later on this week. He responded that doing crane-only installations was going to be an issue. I asked him if his members would be allowed to install by crane only and he responded "no" they were being instructed not to do such installations.

14. I had scheduled the installation of the plunger/cylinder units for Wednesday, May 26, 2004 as follows: Exeter, Dover, and Falmouth.

15. The Exeter project is in the Local 4 South jurisdiction and the Dover project is in the Local 4 North jurisdiction. Because I wanted a Local 4 South Mechanic to do the plunger/cylinder unit installations at both the Exeter and Dover projects on Wednesday, May 26, on Tuesday, May 25, I called Local 4 Business Representative Morse to ask whether a Local 4 South Mechanic could do both installations. He asked whether they would simply be unloading the plunger/cylinder units from the delivery truck, or actually performing the installation. I responded that I wanted them to perform the installation of the units. He then confirmed that they would not be allowed to do that. He further explained that he would be at the Exeter jobsite on Wednesday morning to make sure that Local 4 members were not installing the plunger/cylinder units.

16. I have arranged for cranes on all three jobsites to do the installations on Wednesday, May 26, 2004. With respect to the Exeter site, if I am not allowed to do the installation on Wednesday as scheduled, I will have to unload the plunger/cylinder unit from the delivery truck, and the contractor will have to store it on site. I will later have to re-hire another crane to do the installation. Hiring another crane for approximately half a day will be expensive, and that will be true for each of the three sites. Moreover, because the Exeter building is a five - story building, the crane will be more expensive later than the one that is onsite now, because later the building construction will be further along, and the frame of the building will therefore

5

be higher, causing Otis to hire a crane with a higher "stick" to reach up over the higher frame. In addition, Otis' reputation with the contractor, Sterling, for timely and reliable elevator installations will be damaged. As noted above, this project is the second of eight buildings, and Otis' ability to win the elevator installation bid on the remaining buildings (and thereby hire Local 4 members to do the work) will be jeopardized if this installation is delayed because of the Local 4 work stoppage.

17. With respect to the Millstone project, the situation is even more urgent. The frame of the four-story building is complete, and some work is being held up, with a hole in the top of the building waiting for the plunger/cylinder unit to be lowered in from the top. Some interior work cannot be done until the plunger/cylinder unit is lowered into the wellhole and the hole in the top of the building is closed. If the plunger/cylinder unit is not installed on Wednesday as scheduled, the Millstone schedule will be severely impacted and Otis' relationship with that company will be irreparably damaged. Otis reasonably expects to do business with Millstone in the future, but that prospect will be jeopardized by this work stoppage.

18. Similarly, with respect to the Falmouth project, Pochebit is just starting work on the third story of this four-story building. I have arranged for a crane to be there on Wednesday, May 26, 2004 to unload the plunger/cylinder unit from the delivery truck in the afternoon and lower it into the bottom of the wellhole. If Otis is unable to do the installation on Wednesday due to the work-stoppage, I will have to hire a crane again later at greater expense, and Otis' reputation with Pochebit will be severely, if not irreparably damaged. It is Otis' expectation to do work for Pochebit in the future.

19. It is my understanding from Otis managers in New York and Connecticut that their Locals are not demanding that the plunger and cylinder units be installed by a chain fall, as

described above, but are continuing, as always, to do single-step, crane-only installations. This recent work stoppage issue seems to be a Local 4 issue only.

20. Today, Wednesday, May 26, 2004, Local 4 Business Representative Morse showed up at the Exeter site and, before a crane even arrived, instructed the Otis employees not to install the plunger/cylinder units. At or about 7:15 a.m., Local 4 Business Representative Morse told Mechanic Shelby Lunceford and Helper Mike Tompkins in my presence "I am instructing you not to install the plunger and cylinder with a crane." Local 4 Business Representative Morse was handed a grievance form and asked him to file a grievance and allow us to do our work. He said "no, I am not going to file a grievance, I am instructing them not to install the plunger and cylinder with a crane."

21. I told Local 4 Business Representative Morse that after this job, I have another job in Dover where I am going to direct the same crew to install a plunger and cylinder with a crane. I asked if he was going to give the same instruction. He said "absolutely, I won't allow them to install a plunger and cylinder with a crane there."

22. At or about 7:30 a.m., the crane arrived. I directed Mechanic Lunceford to install the plunger and cylinder with a crane. Mechanic Lunceford told me that he would not install the plunger and cylinder with a crane, at the direction of Local 4.

23. The crane operator from Moore's Crane Service is the same operator who has worked with Otis at numerous sites to install plungers and cylinders. He stated his disbelief that after all of the installations using a crane there was now suddenly a problem. The crane operator spoke to Business Representative Morse and said that installation with a crane was the only safe way to install the unit. When Business Representative Morse said "through the hoistway," the crane operator said that would be impossible with 35 foot unit. Business Representative Morse just shrugged.

24. If I am not allowed to proceed with the installations on Wednesday, May 26, 2004, there is nothing else for the Otis employees to do at these sites.

25. My projects have ground to a halt. The installation of elevators on these three projects cannot go forward if Local 4 is not forced to rescind its unlawful instructions for employees to refrain from following Otis' instructions.

26. Otis' relationship as a subcontractor with the construction contractors on the three projects is threatened and will be severely damaged if the work stoppage continues. These contractors have deadlines under their own agreements with the project owners that must be met or they may face monetary penalties. Otis would like to do future elevator work for these contractors.

SWORN to under the pains and penalties of perjury.

Dated: May 26, 2004

Richard Hogue

BTV.267262.5