UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 MAY 26 P 12: 22
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| LOCAL 4, INTERNATIONAL UNION | ) | |
| OF ELEVATOR CONSTRUCTORS; | ) | |
| MICHAEL LANGER, INDIVIDUALLY, | ) | **04  11108  JLT** |
| and as BUSINESS MANAGER; | ) | |
| KEVIN McGETTIGAN, INDIVIDUALLY, | ) | |
| and as BUSINESS REPRESENTATIVE; | ) | |
| STEVE MORSE, INDIVIDUALLY, | ) | |
| and as BUSINESS REPRESENTATIVE; | ) | |
| and all others conspiring, acting in concert | ) | |
| or otherwise participating with them or | ) | |
| acting in their aid or behalf, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JIM CUMMINGS

Jim Cummings, being duly sworn, deposes and says as follows:

1.      I am employed by Plaintiff Otis Elevator Company ("Otis").  I am the
Construction Superintendent for a project currently underway at Flagship Storage in Mashpee,
Massachusetts (the "Mashpee job"), which involves the installation of two hydraulic elevators.

2.      Otis is engaged in the business of selling, installing, and servicing elevators and
escalators throughout the United States, including Massachusetts.  In cases of new construction,
such as the installation of elevators, Otis contracts with the general construction contractor or
building owner to provide the material and labor and complete installation services for elevators.

3.      Otis has a collective-bargaining agreement with the International Union of
Elevator Constructors ("IUEC") for and on behalf of its local unions, including Defendant IUEC

Local 4, ("Local 4"), which represents Otis' employees in and around Boston, Massachusetts and in Maine. For a further explanation of the parties' collective-bargaining agreement (the "Otis Agreement"), and its relationship to this dispute, I refer to the declaration of David Powilatis.

4.    As Construction Superintendent for Otis, I have overall responsibility for seeing that Otis satisfactorily completes its agreement to install elevators at the Mashpee job.

5.    On the Mashpee job, Otis has a construction agreement with S.V. Raleigh, a valued Otis customer, to install two hydraulic elevators. This contract totals approximately $80,000-$90,000. Otis has done work for S.V. Raleigh in the past, and hopes to do more such work in the future by continuing to provide timely, quality service.

6.    The first step in installing hydraulic elevators like the ones to be installed for the Mashpee job, is to place the plunger/cylinder unit in an encased well-hole at and below the level of the building's foundation. This is the piston and cylinder assembly that, with the elevator's hydraulic system lifts and lowers the elevator cab.

7.    A plunger/cylinder unit can be as much as 40-50 feet in length. Due to the size and weight of the plunger/cylinder unit, installation is generally done by way of a crane of sufficient size and power to hoist the plunger/cylinder unit and lower the unit into the encased well-hole.

8.    In my roughly 20 years' experience with Otis, use of a crane has been the typical method for hoisting and installing plunger/cylinder units like the ones to be installed on the Mashpee job.

9.    A dispute has arisen between Otis and Local 4 involving the use of cranes to hoist and install plunger/cylinder units in advance of general elevator installation. This dispute has resulted in a work stoppage by Otis' employees at the Mashpee job, and elsewhere. Specifically,

2

Local 4 has instructed Otis' employees not to hoist or install any plunger/cylinder units by crane because of the dispute over that method of installation.

10.    On Thursday, May 13, 2004, I conducted a safety meeting with my crew. Defendants Kevin McGettigan and Steve Morse, Local 4 Business Representatives, attended the safety meeting. After the safety meeting, they convened a meeting outside with the Local 4 members. During that meeting, Business Representatives McGettigan and Morse instructed the Local 4 members that they would not be permitted to hoist or install plunger/cylinder units by use of a crane. At that time, Business Representatives McGettigan and Morse also informed the Local 4 members not to hang any doors due to the "nut-sert" dispute that has already been the subject of filings in a related lawsuit.

11.    On Monday, May 24, 2004, I was informed that members of my crew had been directly contacted by Defendant Michael Langer, IUEC Local 4 Business Manager, to remind them that they had been instructed not to install or hoist any plunger/cylinder units by crane.

12.    Hoisting and installation of two plunger/cylinder units has been scheduled at the Mashpee job site for Wednesday morning, May 26, 2004. The installation was scheduled for May 26 because of the availability of crew members in the general Mashpee area on that day.

13.    No other work is available to be performed on the Mashpee job other than the hoisting and installation by crane. Thus, the ready availability of a crew and a crane are the key factors for scheduling purposes.

14.    A crane has been hired for a half-day at a cost of $600-$800 for the express purpose of hoisting and installing the two plunger/cylinder units at issue.

15.    The two plunger/cylinder units at issue have been stored at the Mashpee job site for nearly a month and need to be installed as soon as possible to eliminate risks of weather and other damage to the units.

16.    On Tuesday, May 25, 2004, I informed Mechanic Dave Nicholson and Apprentice Chris Martin that they would be hoisting and installing the two plunger/cylinder units at the Mashpee job site on Wednesday morning, May 26.

17.    Mechanic Nicholson accordingly called the work into the Local 4 business office. He told me that he was informed by Business Representative Morse that he and Apprentice Martin were not to install the plunger/cylinder units by crane.

18.    At or about 7:30 a.m. on Wednesday, May 26, 2004, I spoke with Mechanic Nicholson and directed him to install the plunger and cylinder at the Mashpee job with a crane when the crane arrived (which was scheduled for 11:00 a.m.). Mechanic Nicholson informed me that he needed to call the Local 4 business office. Shortly thereafter, Mechanic Nicholson called me to report that Local 4 Business Manager Langer instructed him not to install the units with a crane. Mechanic Nicholson stated that he intended to follow Local 4's instructions.

19.    Roughly three weeks ago, this same crew hoisted and installed a similar plunger/cylinder unit by crane at Mashpee Common in Mashpee, Massachusetts. Approximately one month ago, another crew under my supervision installed a plunger/cylinder unit by crane at the Equiserve project in Canton, Massachusetts.

20.    On each of these other two jobs, the crew members called the work into the Local 4 business office in advance, and were authorized to proceed with the crane installation.

4

21.    Local 4's interference with Otis' established practice for hoisting and installing plunger/cylinder units is a direct violation of the Otis Agreement, as Local 4 is attempting to advance its position by preventing work from being performed by its members.

22.    Otis has a reputation with its customers for providing first-rate service. Local 4's unlawful work stoppage has jeopardized Otis' goodwill and reputation with its customers and there is no method for calculating the damage cased by Local 4's work stoppage.

SWORN to under the pains and penalties of perjury.


Dated: May 26, 2004

Jim Cummings

BTV.267278.4

5