*OPEN COURT*
*5/27/04*
*Z.L.*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LOCAL 4, INTERNATIONAL UNION )<br>OF ELEVATOR CONSTRUCTORS; )<br>MICHAEL LANGER, individually, and as )<br>BUSINESS MANAGER; KEVIN )<br>McGETTIGAN, individually, and as )<br>BUSINESS REPRESENTATIVE; )<br>STEVE MORSE, individually, and )<br>as BUSINESS REPRESENTATIVE; and all )<br>others conspiring, acting in concert or )<br>otherwise participating with them or acting )<br>in their aid or behalf, )<br>    Defendants. )<br>) | Docket No. 04-11108 JLT |

## AFFIDAVIT OF MICHAEL LANGER

1. My name is Michael J. Langer and I am the Business Manager of Elevator Constructors Local 4. I am submitting this Affidavit in Support of Local 4's Opposition to Otis' Motion for Temporary Restraining Order.

2. This dispute involves the installation of the plunger and cylinder mechanism (commonly referred to as a "jack") used to raise the car in a hydraulic elevator. This mechanism is considered "heavy material" under Article IV, ¶5 of the Otis Agreement.

3. Elevator constructors are trained under an Educational Trust Fund provided in Article XIX of the Otis Agreement. Elevator constructors are specifically trained in the hoisting and rigging of heavy materials including the hydraulic jacks at issue in this dispute. The dispute that gives rise to this case involves the application of Article IV, ¶ 5.

4.  Article IV, ¶ 5 of the Otis Agreement provides certain exceptions to the general rule that Elevator Constructors hoist and lower heavy material without the use of a derrick or crane. Paragraph 5(a) permits the contractor to hoist or lower heavy material "outside of the structure" by use of a "derrick, crane or material hoist". Each of the projects referred to in Otis' papers (i.e. Exeter, NH; Dover, NH; Falmouth, ME; and Mashpee, MA) involve the hoisting and lowering of a plunger/cylinder mechanism <u>inside</u> the structure. Each of the elevators at issue at these projects will be internal to the structure (i.e. inside the building). As a result, Otis does not have the right under Article IV, ¶ 5(a) to use a crane to lower the jack mechanism into the hoistway. Article IV, ¶5 (d) provides "All other material is to be hoisted or lowered by Elevator Constructors without the use of derrick or crane."

5.  For the past 7 years, Otis and all other elevator companies doing business with Local 4 have maintained a practice contrary to the express provisions of Article IV, ¶ 5. Otis (and other elevator companies) have been permitted to use a crane to lower the jack mechanism into the hoistway (notwithstanding the fact that ¶5 limits such use to "outside the structure") provided that the Elevator Constructors maintained their traditional work of installing the jack by rigging and hoisting it into the wellhole. This practice addressed Otis' concerns that its equipment might be damaged if it were placed elsewhere on the jobsite, such as on the ground outside the structure as permitted by Article IV, ¶ 5(a). These jack mechanisms range from 12 feet to 60 feet in length.

6.  The practice between Otis and Local 4 described in the previous paragraph was acknowledged in Mr. Powilatis' letter to me dated May 20, 2004, and attached to his affidavit as Exhibit F. Mr. Powilatis writes, "the practice does include picking the plunger and cylinder to a sufficient height so that the casing can be cut."

7. My understanding of the origin of the agreement relating to the hoisting and lowering of the jack mechanism <u>inside</u> the structure is a follows. Former IUEC President Edward Sullivan and Otis Representative Bob McGuiness negotiated a number of items sometime between 1996 and 1998 in response to Grievance #280 and 281. These items included (a) an agreement to permit a service mechanic in charge; (b) Otis' contribution of $200,000.00 (based on the IUEC's claim for back pay attributable to the installation of multiple piece jack mechanisms) plus contributions to the Apprenticeship Fund in the amount of 13 ½ cents per hour; (c) permission for Otis to install single piece jack mechanisms up to 52 feet in length; (d) Otis established a 401(k) program for its unionized employees. Included in this agreement was the permission for Otis to use a crane to lower a single piece jack into the hoistway notwithstanding the language of Article IV, ¶ 5(a) provided that the traditional work of the elevator constructor of rigging, hoisting and lowering the piece of equipment into place was preserved.

8. This dispute arose not by any action of Local 4. Rather Otis decided to abrogate the existing agreement of permitting the crane to place the mechanism in the hoistway <u>and</u> permitting the Elevator Constructors to rig, hoist and lower the unit into place. Local 4's first notice of this decision by Otis was contained in Dot Mynahan's letters of May 5th and May 7th. <u>Powilatis Affidavit</u>, Exs. A and D ("Otis . . . will not remove the entire plunger and cylinder" and "jacks will not be removed from the ground after it has been placed in the wellhole"). These changes represent an abrogation of the practice under which cranes were permitted <u>inside the structure</u> only as long as the rigging, hoisting and lowering work of the Elevator Constructor was honored and preserved.

9. This is the fourth time in 45 days that Otis has requested <u>Boys Markets</u> relief against Local 4. Twice Judge Singal denied Otis' motion in <u>Otis v. Local 4</u>, 04-CV-74-P-S. Judge

3

Stearns heard and decided a motion in a related case last week. <u>Otis v. Local 4</u>, 04-10966-JLT. Local 4 has preferred unfair labor practice charges against Otis for its treatment of the members sent home in that dispute. That matter is pending before Region One of the National Labor Relations Board as Case No. 1-CA-41777.

10.     This morning I received word that Otis had difficulty responding to emergency calls. I know that approximately fifteen (15) service and repair mechanics reported to work this morning because they did not want to be in a situation where safety calls were not promptly addressed. Nevertheless when counsel for Local 4 advised me that the company had dispatched a supervisor to respond to a call at Faulkner Hospital I asked my office to contact service mechanics who had not reported for work and make themselves available for emergency call backs.

THE FOREGOING AFFIDAVIT CONSISTING OF TEN PARAGRAPHS HAS BEEN SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 27TH DAY OF MAY, 2004.

*[signature]*
Michael Langer, Business Manager

4