UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 JUN 10  A 10: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 04 11108 JLT |
| | ) | |
| LOCAL 4, INTERNATIONAL UNION | ) | |
| OF ELEVATOR CONSTRUCTORS; | ) | |
| MICHAEL LANGER, INDIVIDUALLY, and as | ) | |
| BUSINESS MANAGER; KEVIN McGETTIGAN, | ) | |
| INDIVIDUALLY, and as BUSINESS | ) | |
| REPRESENTATIVE; STEVE MORSE, | ) | |
| INDIVIDUALLY, and as BUSINESS | ) | |
| REPRESENTATIVE, and all others | ) | |
| conspiring, acting in concert or otherwise | ) | |
| participating with them or acting in their aid | ) | |
| or behalf. | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT
## INJUNCTIVE RELIEF SOUGHT

### THE PARTIES

1.     Plaintiff, Otis Elevator Company ("Otis"), a New Jersey corporation, is engaged

in the business of constructing, modernizing, repairing and servicing of elevators and escalators

throughout the United States, including Massachusetts.

2.     Otis employs elevator constructor Mechanics, Helpers, and Apprentices

represented by the International Union of Elevator Constructors (the "IUEC") for and on behalf

of its locals including Defendant IUEC Local 4 ("Local 4").

3.     This is an action to enjoin a work stoppage and other interferences with the

Plaintiff's operations in violation of contract between an employer and a labor organization

DOWNS
RACHLIN
MARTIN PLLC

representing employees in an industry affecting commerce, as defined in the Labor Management

Relations Act, 29 U.S.C. § 141 et seq. This Court has jurisdiction of this action pursuant to 29

U.S.C. § 185(a).

    4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 (b).

    5.      Otis is an employer within the meaning of Section 2(2) of the Labor Management

Relations Act of 1947, as amended, 29 U.S.C. § 152(2).

    6.      IUEC, which has a principal place of business at 7154 Columbia Gateway Drive,

Columbia, MD 21044, is the exclusive collective-bargaining representative of elevator

constructor Mechanics, Helpers, and Apprentices, for and on behalf of its locals, including

Defendant IUEC Local 4, which has a principal place of business at 645R Morrissey Blvd.,

Dorchester, Massachusetts 02122. Local 4 represents Mechanics, Helpers, and Apprentices

employed by Otis in a region that includes Eastern Massachusetts, New Hampshire, and Maine

regions.

    7.      Defendant Michael Langer is Business Manager for Local 4.

    8.      Defendants Kevin McGettigan and Steve Morse are Business Representatives of

Local 4.

    9.      Local 4 is a labor organization within the meaning of Section 2(5) of the Labor

Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5).

    10.     This action is related to a previous action filed in this Court, involving the same

parties, to enjoin another recent illegal work stoppage by Local 4 over another arbitrable dispute

under Article IV of the contract involving "nut-serts." That action is Civil Action No. 04-10966-

JLT and resulted in a Restraining Order dated May 19, 2004 issued by Judge Stearns.

## THE COLLECTIVE-BARGAINING AGREEMENT

11.     Otis and the IUEC, for and on behalf of its locals including Local 4, have entered into a collective-bargaining agreement, which became effective July 9, 2002 and remains in full force and effect until July 8, 2007 (the "Otis Agreement"). A true and accurate copy of the Otis Agreement is attached as Exhibit A.

12.     Since 1987, Otis has entered into a series of five-year collective-bargaining agreements with the IUEC, "for and on behalf of its affiliated local unions . . . ." Prior to 1987, Otis was a member of the National Elevator Industry, Inc. ("NEII") a multi-employer association that negotiated a series of collective-bargaining agreements with the IUEC (the "Standard Agreements").

13.     The Otis Agreement has language substantially the same as the Standard Agreements in many articles.

14.     Article XIV of the Otis Agreement expressly prohibits strikes during the term of the Agreement. It provides in pertinent part:

### ARTICLE XIV
### STRIKES AND LOCKOUTS

**Par. 1.**  It is agreed by both parties to this Agreement that so long as the provisions herein contained are conformed to, no strikes or lockouts shall be ordered against either party. It is understood that this Paragraph shall be applied and construed consistent with the provisions of Article IV, Par. 11 concerning Grievance and Arbitration procedure.

**Par. 2.**  No strike will be called against the Company by the Union unless the strike is approved by the International Office of the International Union of Elevator constructors. Sufficient notice shall be given to the Company before a strike shall become effective. Except in the case of Contract Service Work as specified in Article IX of this Agreement, work stoppages brought about by lawful picketing or strikes by building trades local unions affiliated

)OWNS
.ACHLIN
1ARTIN PLLC

with Building Trades Councils shall not constitute a strike within the meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting Mechanics, Helpers and Apprentices on New Construction or Repair Work, men working on Contract Service shall not be affected by such strike, work stoppage or lockout, and the Union will supply competent men to the Company to do all work covered under Contract service whether such men are continuously employed in this work or not prior to the strike, work stoppage or lockout.

15.     Article XV of the Otis Agreement requires that "[a]ny difference or dispute regarding the application and construction of this Agreement" shall be resolved under the grievance/arbitration procedure set forth in the Otis Agreement, which provides for final and binding arbitration by an impartial arbitrator.

16.     The Otis Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers, and Apprentices employed by Otis in Massachusetts, New Hampshire, and Maine. The Otis Agreement provides that all elevator and escalator construction, service, repair, and modernization must be performed exclusively by elevator constructor Mechanics, Helpers, and Apprentices represented by the IUEC.

## THE UNDERLYING DISPUTE AND THE UNLAWFUL WORK STOPPAGE

17.     Otis has valuable contracts with S.V. Raleigh ("Raleigh") to install two (2) hydraulic elevators at Flagship Storage in Mashpee, Massachusetts (the "Mashpee project"); with Sterling Hill Development ("Sterling") to install a five-story hydraulic elevator at the Inn at Sterling Hill, in Exeter, New Hampshire (the "Exeter project"); with Millstone Properties ("Millstone") to install a four-story hydraulic elevator at the Millstone Apartments, in Dover, New Hampshire (the "Dover project"); and with Pochebit Company ("Pochebit") to install a four-story hydraulic elevator at the Inn at Hilltop, in Falmouth, Maine (the "Falmouth project").

18.     All of these projects are time-sensitive. All of these projects involve agreements with construction contractors with whom Otis' current and future customer relationship will be severely damaged if the elevator installations are not completed on a timely basis.

19.     A dispute has recently arisen between Otis and Business Agents of Local 4 involving "plunger and cylinder installation" in these hydraulic elevators. This dispute has resulted in an illegal work stoppage by Otis' employees on these projects.

20.     Under Otis' general installation methods, the heavy plunger and cylinder units are delivered to the jobsite pre-assembled, on flatbed trucks when the construction of the building has just begun and a foundation is complete. Pursuant to Otis' methods, the plunger and cylinder are then hoisted by crane and lowered into the wellhole.

21.     Local 4 officials, Business Manager Michael Langer and Business Representatives Kevin McGettigan and Steve Morse now contend that the units cannot be hoisted and lowered with a crane unless Otis agrees that the employees may later remove the plunger and cylinder with rigging and hoists (a chain fall) and reinstall them.

22.     There is absolutely no benefit to performing the plunger and cylinder unit installation in the manner insisted by Local 4. On the contrary, having the workers manually re-lift the heavy unit with a hoist, once it is already sitting in the wellhole, involves serious and unnecessary physical safety concerns, as well as delay and expense concerns. The only reason to perform the installation in the manner demanded by the Local 4 business managers and representatives, as opposed to the single-step, crane-only method, is to create additional, unnecessary work for the union members.

23.     Richard Hogue, Otis' Construction Superintendent for the Exeter, Dover, and Falmouth projects described above, has supervised the installation of approximately 50 or 60

hydraulic elevators in the past year employing the method of installing the plunger and cylinder unit by crane, and these installations have been performed by the same Local 4 members who now say that they have been instructed by Local 4 not to perform the installation at all unless Otis agrees to the multiple step procedure described above. Indeed, the Exeter project described above is the second of an eight (8) building project at the same site, and Construction Superintendent Hogue has already supervised the installation of one elevator at this site using a crane, by the same Local 4 union members who are now prohibited by Local 4 from doing it.

24.    On Wednesday, May 5, 2004, Construction Superintendent Hogue instructed Otis Mechanic Kevin McAvoy to install two plunger/cylinder units on a jobsite in Portland, Maine. In customary fashion, Mechanic McAvoy called the job in to Local 4 before starting. An agent of Local 4 called Mechanic McAvoy back shortly thereafter and advised him not to perform the installation with a crane. Eventually Mechanic McAvoy and Helper Scott Melcher went ahead and did the installation with a crane per Construction Superintendent Hogue's instructions.

25.    On Monday, May 24, Construction Superintendent Hogue called Local 4 Business Representative Kevin McGettigan on an unrelated matter. Business Representative McGettigan eventually asked Construction Superintendent Hogue if he had any plunger/cylinder units to install. Construction Superintendent Hogue said that he did, later on in the week. Business Representative McGettigan responded that doing installations with a crane was going to be an issue. Construction Superintendent Hogue asked Business Representative McGettigan if his members would be allowed to install by crane only, and Business Representative McGettigan responded that no, they were being instructed not to do such installations.

26.    Otis had scheduled the installation of four plunger/cylinder units for Wednesday, May 26, as follows: Exeter and Dover, New Hampshire, and Falmouth, Maine and Mashpee, Massachusetts.

27.    On Thursday, May 13, 2004, Jim Cummings, Otis' Construction Superintendent for the Mashpee project, conducted a safety meeting with his crew. Local 4 Business Representatives McGettigan and Morse attended the safety meeting. After the safety meeting, they convened a meeting outside with the Local 4 members. During that meeting, Business Representatives McGettigan and Morse instructed the Local 4 members that they would not be permitted to hoist or install plunger/cylinder units by use of a crane.

28.    On Tuesday, May 25, Construction Superintendent Hogue called Local 4 Business Representative Steve Morse to discuss the Exeter and Dover jobs. Business Representative Morse asked whether the employees would simply be unloading the plunger/cylinder units from the delivery truck, or actually performing the installation. Construction Superintendent Hogue responded that he wanted them to perform the installation of the units. Business Representative Morse then confirmed that the employees would not be allowed to do that with a crane.

29.    On Monday, May 24, 2004, Mr. Cummings was informed that members of his crew had been directly contacted by Local 4 Business Manager Michael Langer and Business Representative Steve Morse to remind them that they had been instructed not to install or hoist any plunger/cylinder units by crane.

30.    On Tuesday, May 25, 2004, Otis Managers of Labor Relations Robert McGuinness and David Powilatis met with IUEC General President Dana Brigham, IUEC Assistant to the General President James Chapman and IUEC Regional Director Timothy Smith.

At that meeting, the dispute concerning the installation of plunger/cylinder units was discussed. Manager of Labor Relations McGuinness offered to expedite any grievance the Union filed regarding its dispute with Otis' installation of plunger/cylinder units through the contractual grievance procedure, but IUEC Assistant to the General President Chapman rejected Otis' offer.

31.    On Wednesday, May 26, 2004, Local 4 Business Representative Morse showed up at the Exeter site and, before a crane even arrived, instructed the Otis employees not to install the plunger/cylinder units. At or about 7:15 a.m., Local 4 Business Representative Morse told Mechanic Shelly Lunceford and Helper Mike Tompkins in the presence of Construction Superintendent Hogue "I am instructing you not to install the plunger and cylinder with a crane." Local 4 Business Representative Morse was handed a grievance form and asked to file a grievance and allow the employees to do their work. Business Representative Morse said "no, I am not going to file a grievance, I am instructing them not to install the plunger and cylinder with a crane."

32.    Construction Superintendent Hogue advised Local 4 Business Representative Morse that after the Exeter job, he had another job in Dover where he would direct the same crew to install a plunger and cylinder with a crane. He asked if Local 4 was going to give the same instruction. Local 4 Business Representative Morse said "absolutely, I won't allow them to install a plunger and cylinder with a crane there."

33.    At or about 7:30 a.m. on May 26, the crane arrived at the Exeter job, Construction Superintendent Hogue directed Mechanic Lunceford to install the plunger and cylinder with a crane. Mechanic Lunceford said that he would not install the plunger and cylinder with a crane.

34.     Hoisting and installation of two plunger/cylinder units has been scheduled at the Mashpee project for Wednesday morning, May 26.

35.     On Tuesday, May 25, 2004, Otis Construction Superintendent Cummings informed Mechanic Dave Nicholson and Apprentice Chris Martin that they would be hoisting and installing the two plunger/cylinder units at the Mashpee job site on Wednesday morning, May 26.

36.     Mechanic Nicholson called the work into the Local 4 business office.  Business Representative Morse told mechanic Nicholson that he and Apprentice Martin were not to install the plunger/cylinder units by crane.

37.     On Wednesday, May 26, 2004, at or about 7:30 a.m. Construction Superintendent Cummings informed Mechanic Nicholson and Apprentice Martin that he would direct them to install the plungers and cylinders by crane.  Mechanic Nicholson called the Local 4 business office.  Shortly thereafter, Mechanic Nicholson called Construction Superintendent Cummings and stated that Local 4 instructed him not to install the plungers and cylinders and that the employees would follow Local 4's instructions.

38.     The Otis Agreement's grievance and arbitration procedure applies to work jurisdiction disputes including disputes over what work will be performed and how it will be performed.  The Otis Agreement provides that:

> "While any question or dispute pertaining to Article IV or Article IV(A) is being processed the Company, where possible, shall assign the employees work other than the work in dispute.  Where the work has progressed to a point where it is not possible to perform work other than the work in dispute, then the employee shall perform the disputed work pending final resolution as provided herein."

Art. IV, Par. 11.

39.     At the four projects at issue, installing the plungers and cylinders is a necessary next step and there is no other work for the Otis employees to be done at those projects until the plunger and cylinder units are installed.

40.     Local 4 has instructed its members, including Otis employees, not to install the plungers and cylinders.

41.     On Tuesday, May 27, 2004, the work stoppage that began the previous day at four construction sites spread to effect virtually all Otis operations in the Boston area and elsewhere. Of approximately 110 Local 4 members employed by Otis in the Boston area, nearly 90 did not report to work on May 27, 2004.

42.     Otis has service and maintenance contracts with numerous customers in the Boston area, including hospitals, assisted living facilities, nursing homes, power plants, apartments, condominiums and hotels. Otis' service contracts provide for the service of elevators and escalators, including emergency service, 24 hours per day, seven days per week.

43.     Every one of the approximately 40 Local 4 members employed by Otis to service elevators and escalators in the Boston area failed to report to work as scheduled on May 27, 2004.

44.     This dispute is subject to arbitration pursuant to Article IV, Par. 11(a) and Article XV, Par. 1 of the Otis Agreement.

45.     The work stoppage is in violation of Article IV, Par. 11(b) and Article XIV of the Otis Agreement and is illegal.

46.     If Local 4 continues to interfere with Otis' ability to install plungers and cylinders at the job sites described above and continues to engage in work stoppages, Otis will be unable to fulfill its contractual obligations in a timely manner.

DOWNS
LACHLIN
MARTIN PLLC

10

47.    The unlawful acts specified herein were committed by Local 4 acting through its agents and members.

48.    Otis has demanded that Local 4 cease its illegal work stoppages and comply with the Otis Agreement, but the Union has refused.

49.    The Defendants' coercive actions are in deliberate willful and calculated violation of the Otis Agreement in disregard of the arbitration process.

50.    Unless restrained by order of this Court, the work stoppages and concerted refusal to work by the employees represented by Defendants in violation of the Otis Agreement will continue.

51.    Defendants have previously engaged in a pattern of unlawful work stoppages including work stoppages occurring in or about August 2002, November 2003, April 2004 and May 2004.

### THE IRREPARABLE HARM RESULTING FROM THE UNLAWFUL WORK STOPPAGE

52.    With respect to the three projects under Construction Superintendent Hogue's supervision, Otis has cranes on all three jobsites now that are or were prepared to proceed with installations on Wednesday, May 26, 2004.

53.    With respect to the Exeter site, if Otis is not allowed to do the installation on Wednesday as scheduled, Otis will be forced to unload the plunger/cylinder unit from the delivery truck, and the construction contractor will have to store it on site. Otis will later have to re-hire another crane to do the installation. Because the Exeter building is a five-story building, the crane to be rented later will be more expensive than the one that is onsite now, because the building construction will be further along, requiring Otis to hire a crane with a higher "stick" to reach up over the higher frame.

DOWNS
LACHLIN
MARTIN PLLC

11

54.    In addition, Otis' reputation with the contractor at the Exeter job, Sterling, for timely and reliable elevator installations will be damaged. This installation Local 4 is preventing from proceeding is at the second of eight buildings at the site, and Otis' ability to win the elevator installation bid on the remaining buildings (and thereby hire Local 4 members to do the work) will be jeopardized if this installation is delayed because of the Local 4 work stoppage.

55.    With respect to the Dover project, the situation is even more urgent. The frame of the four-story building is complete, and work at the site is being delayed because of the hole in the top of the building that is being left open to allow the plunger/cylinder unit to be lowered in from the top. Interior work by other trades inside the building cannot be done until the hole in the top of the building is closed.

56.    If the plunger/cylinder unit is not installed on Wednesday as scheduled, the schedule for the Dover project will be severely impacted and Otis' relationship with its customer, Millstone, will be irreparably damaged. Otis reasonably expects to do business with Millstone in the future, but that prospect will be jeopardized by this work stoppage.

57.    Similarly, with respect to the Falmouth project, the construction contractor Pochebit is just starting work on the third story of this four-story building. Otis has arranged for a crane to be there on Wednesday, May 26, to unload the plunger/cylinder unit from the delivery truck in the afternoon and lower it into the wellhole. If Otis is unable to do the installation on Wednesday due to the work-stoppage, it will have to hire a crane again later at greater expense, and Otis' reputation with Pochebit will be severely, if not irreparably damaged. It is Otis' expectation to do work for Pochebit in the future.

58.    With respect to the Mashpee project in Massachusetts under Construction Superintendent Cummings' supervision, a crane has been hired for a half-day at a cost of $600-

$800 for Wednesday, May 26 for the express purpose of hoisting and installing the two

plunger/cylinder units at issue. Local 4's unlawful work stoppage has jeopardized Otis' goodwill

and reputation with Mashpee project contractor Raleigh.

59.    There is no method for calculating the damage cased by Local 4's work stoppage.

60.    As a result of Local 4's directive, elevator construction work at the four projects

described above has come to a complete standstill. Otis has been unable to proceed with

construction at the projects in a timely manner. Otis has completed all other work that can be

performed at this time other than the work that Local 4 is directing employees to refuse to

perform.

61.    Local 4's refusal to work is preventing Otis from fulfilling its contractual

obligations and jeopardizing Otis' relationship with the construction contractors on the four

projects. Otis vies with several other elevator and escalator manufacturers in an extremely

competitive market for construction contracts. Timely completion of construction contracts is

often one of the most important factors in determining whether Otis is awarded subsequent

contracts.

62.    Otis has contractual obligations to customers to service their elevators including

responding promptly to emergency situations where public safety, health and welfare are at risk.

The need for an immediate response to elevator problems is especially important at hospitals

where elevators are used to transport patients in need of critical care.

63.    The prompt servicing of elevators and escalators in emergency situations,

particularly after normal working hours, is important to public safety, health and welfare. Such

situations have occurred, for example, when smoke or fire threatens buildings, when people

become trapped in elevators, and when patient care or surgery is interrupted by an elevator

failure. The presence of non-operational elevators and escalators at hospitals, nursing homes or other locations where the elderly or disabled live or work can exacerbate the conditions created by emergencies. It is for this reason that Otis provides its customers with 24-hour service, every day of the year. Otis' customers expect that service and depend on the Company's reliability at all times. A collective work stoppage or strike by employees refusing to handle service calls would seriously disrupt and interfere with Otis' service operations in the greater Boston area. In addition, it would pose a serious threat to customer relations and would put the Company at risk of potential liability for its inability to promptly respond to callbacks.

64.    Unless the relief sought herein is granted, substantial and irreparable injury to Otis and its customers will follow. The unlawful work stoppages will prevent Otis from fulfilling its contractual obligations and threaten Otis' reputation and good will with customers.

65.    Unless the relief sought herein is granted, substantial and irreparable injury to Otis and its customers will follow. The unlawful work stoppage is preventing Otis from fulfilling its contractual obligations and threatening Otis's reputation and good will with customers.

66.    Otis has no adequate remedy at law for the injuries caused and threatened by Defendants' illegal conduct.

67.    Unless Defendants are enjoined from their illegal and unlawful acts, and are ordered to resume performance of work, such actions will continue to cause immediate, substantial, and irreparable harm to Otis, the amount of which cannot be definitely ascertained, in that:

a)    Otis has been and will be unable to render adequate performance of its contractual obligations to construct elevators;

DOWNS
RACHLIN
MARTIN PLLC

14

b)      Otis will suffer temporary and permanent loss of business as a result of damage to its good will and reputation in the industry and its commercial relationships as a result of which its ability to bid on future jobs will be impaired;

c)      Otis will be caused to breach its agreements to provide elevator maintenance service to its customers; and

d)      Members of the public will be subject to threat of irreparable harm.

68.    The effect on the Defendants, if injunctive relief is granted, is less onerous than the harm that will be suffered by Otis and its customers if the injunction is not granted.

69.    Otis has complied with all obligations imposed by law that are involved in this labor dispute.

70.    Otis has made every reasonable effort to settle this labor dispute.

71.    No prior application for the specific relief herein sought by Otis or for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiff, Otis Elevator Company demands judgment:

I.      Granting Plaintiff a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants, their officers, agents, representatives, members, employees and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Complaint, from in any manner or by any means:

A)      calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, work stoppage, work slowdown, sit-down, or any other refusal to work or act of coercion or interference with Plaintiff's normal operations;

DOWNS
RACHLIN
MARTIN PLLC                                      15

B)  by Union discipline, penalty or otherwise, interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiff in the course of any such employee's or agent's work for Plaintiff;

C)  by threats or otherwise, interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of Plaintiff's operation, and from taking any action which would interfere with this Court's jurisdiction in the premises;

D)  causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the Plaintiff's normal operations prior to the hearing on Plaintiff's application for a preliminary injunction;

II.  Directing Defendants to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant Local 4, and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of Defendants, and all those in active concert with them; requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendants; and rescinding any oral or written notices, orders, directions, or requests to employees of Plaintiff authorizing, directing, inducing or encouraging any strike, slow-down, work stoppage, refusal to work, or other limitation upon production;

III.  Directing Defendants together with Plaintiff forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiff and Defendants, the present dispute; and

IV.  Granting such other and further relief to which Plaintiff may be entitled, including damages, costs and disbursements of the action.

)OWNS
.ACHLIN
1ARTIN PLLC

16

June 10, 2004                          Respectfully submitted,

                                       _Timothy E. Copeland, Jr._
                                       Timothy E. Copeland Jr.
                                       Peter B. Robb
                                       DOWNS RACHLIN MARTIN PLLC
                                       80 Linden Street
                                       PO Box 9
                                       Brattleboro, VT  05302-00009
                                       Telephone: 802-258-3070
                                       Fax:  802-258-2286
                                       E-mail:  tcopeland@drm.com

                                       and

                                       _Nathan L. Kaitz_
                                       Nathan L. Kaitz (BBO# 256760)
                                       Morgan, Brown & Joy, LLP
                                       One Boston Place
                                       Boston, MA  02108
                                       T.  (617) 523-6666
                                       F.  (617) 367-3125
                                       E-mail nkaitz@morganbrown.com

### CERTIFICATE OF SERVICE

I, Nathan L. Kaitz, hereby certify that I have on this 10th day of June, 2004, served the within pleading, by hand, upon:  Paul Kelly, Esquire, Segal, Roitman & Coleman, 11 Beacon Street, Boston, MA  02108.

                                       _Nathan L. Kaitz_
                                       Nathan L. Kaitz

BRT.52970.2

DOWNS
RACHLIN
MARTIN PLLC