UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2004 JUN 18  P 4:47

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| OTIS ELEVATOR COMPANY )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>LOCAL 4, INTERNATIONAL UNION )<br>OF ELEVATOR CONSTRUCTORS; )<br>MICHAEL LANGER, INDIVIDUALLY, )<br>and as BUSINESS MANAGER; )<br>KEVIN McGETTIGAN, INDIVIDUALLY, )<br>and as BUSINESS REPRESENTATIVE; )<br>STEVE MORSE, INDIVIDUALLY, and )<br>as BUSINESS REPRESENTATIVE; )<br>and all others conspiring, acting in concert )<br>or otherwise participating with them or )<br>acting in their aid or behalf, )<br> )<br>    Defendants. ) | Docket No. 1:04-cv-11108-JLT |

### DECLARATION OF MARK MACLEOD

Mark MacLeod, being duly sworn, deposes and says as follows:

1.  I am Regional Field Operations Manager, Service for Otis Elevator Company's ("Otis") Northeast Region. In that position, I am responsible for all of Otis' elevator and escalator service and maintenance contracts in New York and New England. I support eight branch managers and 22 service supervisors. I am also responsible for directing labor relations in my region.

2.  Otis has service and maintenance contracts with numerous customers in New York and New England. Under those contracts, Otis is obligated to maintain, repair and adjust elevators and escalators on an "as-needed basis." All of Otis' service and maintenance contracts in my region require Otis to respond to service calls 24 hours per day, 7 days per week.

3. Otis has a contract with Boston University to service elevators located throughout several buildings on the Boston University campus (the "BU Contract"). In July and August 2002, a dispute arose with Local 4, International Union of Elevator Constructors ("Local 4"), regarding Otis' arrangements for providing elevator service personnel at BU. The Union contended that Otis' staffing arrangement was somehow improper under the Otis/IUEC collective-bargaining agreement (the "Otis Agreement").

4. In December 2003, the parties arbitrated the dispute. In February 2003, the Arbitrator issued a ruling in favor of Otis, ruling that its application of the collective-bargaining agreement provisions addressing staffing was proper at Boston University.

5. Consistent with the Arbitrator's ruling and the Otis Agreement, Otis has been staffing the BU Contract with three employees assigned to work from 7:00 a.m. to 4:00 p.m., one employee assigned to work from 8:00 a.m. to 5:00 p.m., and one employee assigned to work from 5:00 p.m. to 12:00 midnight.

6. Following the Arbitrator's ruling, on or about June 4, 2004, I met with Local 4 Business Manager Michael Langer. Local 4 Business Manager Michael Langer said he wanted to "renegotiate" staffing arrangements at Boston University. I said I did not believe it was necessary to renegotiate since an Arbitrator had recently upheld Otis' application of the collective-bargaining agreement's staffing provisions to the BU Contract. Local 4 Business Manager Langer said he disagreed and contended that the term "examination and care" in the Otis Agreement precluded the employee working 8:00 a.m. to 5:00 p.m., and the employee working 5:00 p.m. to 12:00 midnight from responding to service calls regarding malfunctioning elevators <u>during their shifts</u>, even though the employees would be on site at the time of the service call and responding to malfunctioning elevators is, of course, part of the duties Otis

2

expects of service Mechanics. Local 4 Business Manager Michael Langer said he was not going to order a work stoppage at that time, but would instruct the employee working 5:00 p.m. to 12:00 midnight to claim premium pay time on his time card for any time spend responding to a service call, and file a grievance in the event Otis did not pay employees accordingly.

7. I did not agree that employees were entitled to premium pay for responding to malfunctioning elevators during their shifts, but I told Local 4 Business Manager Langer that his proposal to direct employees to claim premium pay and assert a grievance over its nonpayment was the appropriate way to process the dispute.

8. Contrary to Local 4 Business Manager Michael Langer's statement that he intended to follow the grievance/arbitration procedure, on Monday, June 14, 2004, the employee assigned to work from 8:00 a.m. to 5:00 p.m. at Boston University reported being instructed by Local 4 that he was prohibited from responding to service calls during his shift. The employee reported that he was following instructions from Local 4 to simply refuse to respond in the case of service calls, forcing Otis to dispatch someone else to respond to the call.

9. Since June 14, 2004, there has been one (1) service call dispatched to the employee which has been rejected. Otis is attempting to address the situation by reassigning service calls to the two employees assigned to work 7:00 a.m. to 4:00 p.m. However, with the large number of elevators located among several buildings on the Boston University campus, and since those employees are only scheduled to work until 4:00 p.m., it will only be a matter of time before Otis receives a service call at Boston University to which they are not in a position to respond.

SWORN to under the pains and penalties of perjury.

Dated: June _18_, 2004

_____
Mark MacLeod

3