UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LOCAL 4, INTERNATIONAL UNION )<br>OF ELEVATOR CONSTRUCTORS; )<br>MICHAEL LANGER, individually, and as )<br>BUSINESS MANAGER; KEVIN )<br>McGETTIGAN, individually, and as )<br>BUSINESS REPRESENTATIVE; )<br>STEVE MORSE, individually, and )<br>as BUSINESS REPRESENTATIVE; and all )<br>others conspiring, acting in concert or )<br>otherwise participating with them or acting )<br>in their aid or behalf, )<br>    Defendants. )<br>) | Docket No. 1:04-CV-11108- JLT |

## OPPOSITION TO MOTION FOR RECONSIDERATION OR MODIFICATION

The Local Union Defendants, Local 4, International Union of Elevator Constructors and its representatives Michael Langer, Kevin McGettigan and Steve Morse (who have been sued both in their individual and official capacities) oppose the Motion for Reconsideration filed by Otis Elevator Company ("Otis"). Invoking "federal labor policy favoring private dispute resolution" Otis insists on an unqualified and unconditional right to Boys' Markets relief. Complaining that the Court's Order of June 17, 2004 is "unsupported by evidence or legal authority" Otis seeks modification. The Local Union Defendants oppose Otis' Motion because the Court's Order is supported by both the facts and the law.

## **FACTUAL BACKGROUND**

The spring of 2004 saw an unprecedented increase in judicial filings by Otis against Local 4. On April 13, 2004 Otis filed a case entitled Otis Elevator Company v. Local 4, International Union of Elevator Constructors, et al, No. CV04-74P-S in the United States District Court for the District of Maine. Otis requested two emergency hearings and the Court heard Otis on April 14, 2004 and April 16, 2004. On April 14, 2004 Otis complained that "it was not making any headway in getting the Union to see its position" regarding "overhead protection for employees working in hoist ways"[1] in an appearance before the District Court of Maine seeking a restraining order. Notwithstanding the provisions of the Labor Management Relations Act, 29 USC, §143,[2] Otis sought judicial relief against what it characterized to be a strike in violation of the collective bargaining agreement. Judge Singal denied relief stating "the matter is moot I'm not going to issue the TRO."[3]

Two days later Otis again appeared in the District Court of Maine seeking judicial relief forcing employees to install prefabricated electronic components and predrilled, pretapped doors. Again the Court denied relief stating "this Court is not going to be placed in a position to wander around the construction project and listen to squabbles between the parties. That is my ruling. Denied."[4]

On May 14, 2004 Otis filed a second action, this one in the District of Massachusetts, entitled Otis Elevator Company v. Local 4, International Union of Elevator Constructors, et al, No. 04-10966-JLT. Otis' complaint in that case, like its second complaint in the Maine case,

---

[1] See Kelly Affidavit Exhibit A at 4.
[2] 29 U.S.C. §143 carves certain safety disputes out of the definition of "strike" activity: "nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this chapter."
[3] See Kelly Affidavit Exhibit A at 16.
[4] See Kelly Affidavit Exhibit B at 25.

involved the installation of doors with predrilled or pretapped holes. Notwithstanding the language of the collective bargaining agreement to the effect that certain pre-fabricated doors will not be installed[5] Otis complained that the refusal of Local 4 members to install predrilled or tapped doors constituted a strike in violation of the collective bargaining agreement. On that occasion the Union proposed that Otis respect a "satisfactory settlement" that had previously been reached wherein Otis compensated employees at the rate of ten minutes pay per predrilled hole. The Court accepted that proposal and issued the Order contingent on Otis' escrow payment to cover the satisfactory settlement provision.[6]

On May 26, 2004 Otis filed its third Federal Court action in six weeks. This case like the two previous cases involves Otis' use of labor saving devices. Specifically, the instant case involves Otis' "use of cranes to hoist and install plunger/cylinder units". Declaration of Jim Cummings at par. 9. The Agreement clearly provides that a crane may be used to hoist heavy material (including "plungers and cylinders") outside of the structure. Agreement, Article 4, par. 5. See Affidavit of Michael Langer at paras 4-6. Notwithstanding the fairly clear language of the collective bargaining agreement Otis disciplined Local 4 members (by sending them home for the day) rather than seeking an arbitral resolution of the dispute. Construing the members' conduct as a strike Otis claimed entitlement to Boys' Markets' relief. The Court, on May 27, 2004 and again on June 17, 2004 granted Otis' request but did so with conditions[7] designed to minimize further judicial intervention in future contract disputes. It is to these conditions that Otis objects.

---

[5] See Otis-IUEC Agreement, Appendix A, par. 5 "in cases where doors are delivered to the jobsite, predrilled or tapped for such devices as referred to in this paragraph, doors will not be installed until a satisfactory settlement between the Employer and the Union is made" (emphasis supplied).

[6] See Kelly Affidavit Exhibits C and D.

[7] The Court directed Otis and Local 4 to arbitrate the plunger cylinder dispute under the Expedited Labor Arbitration Procedures of the American Arbitration Association. The Court also directed Otis to offer Local 4 expedited arbitration before applying to court for further relief.

3

## LEGAL ANALYSIS

Otis apparently grounds its Motion for Reconsideration entirely on Boys' Markets, Inc. v. Retail Clerk's Union Local 770, 398 US 235 (1970). Otis apparently views federal policy as establishing a rule that any employer who can make a colorable claim that employees, subject to a no-strike clause, are doing anything less than what they are instructed by the Employer is entitled to a temporary restraining order and a preliminary injunction. A review of the Boys' Markets opinion and the cases that follow it demonstrate that the relief it authorizes is a narrow exception to the general rule established in the Norris-LaGuardia Act, 29 U.S.C. §101 et seq., that federal courts lack jurisdiction to issue restraining order and injunctions in labor disputes.[8]

Boys' Markets established an exception to the general rule established by Norris-LaGuardia. Where a collective bargaining agreement contains both a no-strike provision and an arbitration provision a court may issue equitable relief against a strike. Boys' Markets' did not commit the federal courts to serve the clerical function of issuing a TRO whenever Otis asked for one. Instead the Court instructed federal judges to engage in a rather traditional equitable assessment. Courts are to consider 1. "whether breaches are occurring and will continue, or have been threatened and will be committed"; 2. "whether they have caused or will cause irreparable injury to the Employer"; and 3. "whether the Employer will suffer more from the denial of an injunction than will the Union from its issuance". 398 US at 254.

While the Union concedes an arbitrable dispute exists over whether a crane may be used to install (as opposed to deliver) a plunger/cylinder unit, the Union does not concede that Otis

---

[8] 29 U.S.C. §101 provides "No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

has made a showing that "breaches are occurring". The plain language of the collective bargaining agreement allows plunger/cylinder units to be hoisted by crane outside (but not inside) of a structure. Failure to use a crane to perform a task (installation of the unit inside the structure) that the collective bargaining agreement says will be performed without the use of a crane does not amount to a breach. If installation by crane is forbidden, refusing to install by crane is not a strike. Moreover, the no-strike clause itself contains language obligating the Company to the provisions of the Agreement:

> It is agreed by both parties to this Agreement that <u>so long as the provisions herein contained are conformed to</u>, no strikes or lockouts shall be ordered against either party. <u>Complaint</u>, Ex. A, Article XIV, par. 1.

Even assuming that Otis' interpretation of Article IV, par.5 is entitled to deference pre-arbitration, Otis has made no showing that "irreparable injury" has resulted from the members' conduct. Local 4 members are specifically trained in the hoisting and rigging of plunger/cylinder units. It is part of their craft.[9] See <u>Langer Affidavit</u> at par. 3. How does Otis establish irreparable harm if the unit is installed by the Elevator Constructors rather than by crane operators? It simply doesn't. This dispute should be resolved but it is difficult to appreciate how a company of this magnitude can be irreparably harmed by installation of an elevator mechanism by elevator constructors.[10]

---

[9] Crane operation, on the other hand, is a separate craft's jurisdiction. Thus, Article IV, par. 5 authorizes the use of a crane for hoisting outside of the structure "under the supervision of Elevator Constructors in the employ of the Company". The Company has the right to hire a crane for delivery of the unit, but not for installation.

[10] When a Union seeks a reverse <u>Boys' Markets</u>' injunction (to enjoin a shop closure pending arbitration, for example), the test for irreparable injury is strict. "Irreparable injury does not mean simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather 'injury so irreparable that a decision of the [arbitration] Board in the union['s] favor would be but an empty victory.'" <u>International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 251 v. Almac's, Inc.</u>, 894 F.2d 464, 466 (C.A.1 1990). Otis will not be in danger of achieving an empty victory if it prevails in arbitration.

The final consideration Boys' Markets' asks judges to weigh is whether the Employer will suffer more by the denial of the injunction than the Union will by its issuance. Here, the Supreme Court has authorized the federal courts to perform a traditional equitable function of minimizing the harm. Had the court denied Otis' request for relief been denied rather than granted it with conditions it is difficult to assess whether, let alone how much, Otis would have suffered.

The Boys' Markets' Court also made clear that its intent was to create a narrow exception which did not "undermine the vitality of the Norris LaGuardia Act". 398 US at 253. Norris LaGuardia, itself included a specific provision that encouraged arbitration. 29 U.S.C. §108 provides in pertinent part:

> "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in a labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

The Court, in Boys' Markets stated that the Act itself (enacted in 1932) manifests a policy determination that arbitration should be encouraged. 398 US at 242. This policy was reaffirmed in the *Steelworkers Trilogy* in 1960[11] and again in Boys' Markets in 1970.

### 1. The expedited arbitration condition is supported by the law and the facts

While paying lip service to arbitration, Otis has done nothing to resolve the underlying dispute apart from its court filings. Indeed, it has refused to participate in the arbitration proceeding ordered by the court. See Kelly Affidavit, Ex. E. Otis protests that it never agreed to

---

[11] Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

6

expedited arbitration.[12] In doing so it ignores the fundamental purpose of arbitration. "Indeed, the <u>very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement</u> of industrial disputes without resort to strikes, lockouts, or other self-help measures". Boys' Markets', 398 U.S. at 249 (emphasis supplied).

In Chicago Typographical Union v. Dow Jones & Co., 755 F. Supp. 209 (N.D. Ill. 1990) Judge Hart heard and rejected a similar protest. There the employer insisted that because it never agreed to expedited arbitration, the court lacked the authority to order expedited arbitration. Citing the *Steelworkers Trilogy* and the policy of "promoting industrial harmony through a fair, fast and flexible system utilizing neutral but knowledgeable 'peacemakers' the court ordered expedited arbitration over the employer's objection. See also International Chemical Workers Union v. Olin Corporation, 1987 WL 15405 (N.D.Ill. 1987).

The absence of contractual language authorizing expedited arbitration does not prevent a court from ordering it. In Teamsters v. Lucas Flour, 369 U.S. 95 (1962) the Court approved a violation of no-strike obligation even though the collective bargaining agreement did not contain a no-strike clause. Again, the importance of arbitration caused the Court to imply the obligation. The Court stated "a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare". 369 U.S. at 105.[13] If a Union can be held to have violated an implied no-strike clause, an employer can be ordered to expedite resolution of a dispute in the absence of an expressed undertaking to do so.

---

[12] It should be pointed out that neither did Otis agree, in the collective bargaining agreement, to arbitrate a dispute with Local 4, as opposed to the International. Otis will accept an order to arbitrate a dispute against Local 4 because it understands that to be the price of Boys Markets' relief. Its protest that the rules for arbitration do not include expedited arbitration overlooks the equally compelling proposition that the rules for arbitration in Article XV do not prescribe a role for Local 4.

[13] In dissent Justice Black took the view that if it is not in the contract the Court shouldn't put it there: "I have been unable to find any accepted principle of contract law--traditional or otherwise--that permits courts to change completely the nature of a contract by adding new promises that the parties themselves refused to make in order that the new court-made contract might better fit into whatever social, economic, or legal policies the courts believe to be

Here, Otis has over stayed its judicial welcome. It has asked that the District Court in Maine and two judges of the District of Massachusetts to serve as umpires of its contract disputes. Overlooking the fact that its collective bargaining agreement contains no rules governing an arbitration between it and Local 4 it objects to the court's order that it expedite the process. Otis has shown precious little ardor for actual dispute resolution. Its request for reconsider evidences its disinclination to resolve the dispute.

### 2. The condition that Otis offer to arbitrate future disputes before again requesting Boys' Markets' relief is supported by the facts and the law.

The question of whether an employer must demand arbitration as a pre-condition to Boys' Markets' relief has been discussed. In Elevator Mfr's Assn of New York v. IUEC, Local 1, 331 F.Supp. 165 (SDNY 1971) the court ordered the employer to do so. In UPS v. Teamsters, Local 804, 698 F. 2d 100 (2d Cir. 1983) the court withheld such an automatic requirement. Here, it is unnecessary for the court to resolve the issue of whether every employer must offer arbitration prior to seeking Boys' Markets' relief. The court ordered Otis to do so in the future as a pre-condition to coming to court for the fifth time in two months. Surely that condition is within the Norris-LaGuardia standard that Otis "make every reasonable effort" to resolve disputes through "voluntary arbitration".

Otis seeks equitable relief against Local 4 but it refuses to comply with the court's order that it expedite the arbitration process. Whether the question be framed as reconsideration of an equitable order or an equitable request for a stay, Otis' failure to comply with the court's order undercuts its claim for relief. "We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes

---

so important that they should have been taken out of the realm of voluntary contract by the legislative body and furthered by compulsory legislation." 369 U.S. at 108(Black, dissenting) As compelling as Justice Black's argument

that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal". <u>Maness v. Meyers</u>, 419 U.S. 449, 458-459 (1975). This, Otis has failed to do.

## CONCLUSION

For the reasons set forth herein, the Local Union Defendants respectfully oppose the motion of Otis for reconsideration or, in the alternative, for a stay.

Respectfully submitted,

IUEC LOCAL 4, MICHAEL LANGER, KEVIN McGETTIGAN, and STEVE MORSE and all others,

By their attorney,

/s/ P. F. Kelly

Paul F. Kelly, Esq.
SEGAL, ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
(617) 742-0208

Dated: July 1, 2004

---

was and is, the Court held that the prompt resolution of disputes was of sufficient import to imply a no-strike obligation into the collective bargaining agreement.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY )<br>　　Plaintiff, )<br>)<br>v. )<br>)<br>LOCAL 4, INTERNATIONAL UNION OF )<br>ELEVATOR CONSTRUCTORS, et al )<br>　　Defendants. )<br>) | Docket No. 1:04-CV-11108- JLT |

### AFFIDAVIT OF PAUL F. KELLY

1. My name is Paul F. Kelly and I represent the Local Union Defendants in this case and two prior cases. I have attached the transcripts of the hearings in <u>Otis Elevator Company v. Local 4, International Union of Elevator Constructors</u>, 1:04-CV-11108-JLT (D. Maine) as Exhibit A (April 14, 2004 hearing) and Exhibit B (April 16, 2004 hearing).

2. I have attached the transcript of the May 14, 2004 hearing in <u>Otis Elevator Company v. Local 4, International Union of Elevator Constructors</u>, 1:04-CV-11108- JLT (D. Mass.) as Exhibit C and a copy of Judge Stearns' order of May 19, 2004 as Exhibit D.

3. Otis has informed the American Arbitration Association that it is unwilling to participate in expedited arbitration. A copy of the Otis letter to that effect is attached hereto as Exhibit E.

_____
Paul F. Kelly, Esq.

Dated: June 28, 2004