UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2004 JUL -9  A 10: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| OTIS ELEVATOR COMPANY<br>Plaintiff; | )<br>)<br>) |
| v. | )<br>) |
| LOCAL 4, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS; MICHAEL LANGER, INDIVIDUALLY, and as BUSINESS MANAGER; KEVIN McGETTIGAN, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; STEVE MORSE, INDIVIDUALLY, and as BUSINESS REPRESENTATIVE; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Docket No. 1:04-cv-11108-JLT

## REQUEST FOR IMMEDIATE RULING ON MOTION FOR RECONSIDERATION

Defendants continue to brazenly flout the Court's orders, federal labor law, and the collective bargaining agreement by encouraging Otis employees to strike and refuse to work. Defendants' unlawful conduct has, and will continue to, endanger members of the elevator-riding public, unless further restrained by this Court. As a result of Defendants' blatant disregard for the Court's Order, on Tuesday night there was no Otis employee on-site at Boston University as scheduled, when a passenger became trapped in an elevator leading to a serious delay in responding to that emergency situation.

On June 18, 2004, Otis Elevator Company ("Otis") moved for reconsideration of the Court's June 17, 2004 Order in this matter, or in the alternative, a stay of portions of the Court's order pending appeal (the "Motion for Reconsideration"). Otis established that the Court's

orders were encouraging Defendants to exert strike pressure to exact concessions from Otis. The Motion included a declaration describing Defendants' conduct at Boston University ("BU"), where even though Otis and the IUEC recently completed arbitration over Otis' staffing arrangement for service work, Local 4 was using strike pressure to coerce Otis to "negotiate" a new staffing arrangement. As a result of Local 4's conduct, Otis was without any onsite service mechanics for a time on June 14, 2004, exposing Otis, its customers and passengers to a risk of immediate harm.

In the absence of relief from this Court, it was only a matter of time before the risks created by Defendants' conduct became reality. That time has arrived.

At 6:53:53 p.m. on July 6, 2004, Otis received a call reporting that an elevator on the BU campus had malfunctioned and a passenger was trapped inside. Otis normally has an on-site mechanic stationed at BU at all times between 7:00 a.m. and midnight. A mechanic should have been no more than five minutes away from this service call.

However, at the time this emergency call was received on July 6, no mechanic was working the 5:00 p.m. to midnight shift. The mechanic scheduled to work reported he was "sick." Other employees contacted and asked to work in place of the "sick" employee, reported being "persuaded" by Local 4 not to work the shift because Local 4 was trying to force Otis to "negotiate" an agreement for BU. One employee reported "the word is out not to take the shift." Accordingly, Otis employees refused to man that shift until Local 4 allowed them to do so. Unfortunately, Local 4 did not call off this strike and allow the shift to be manned until after the passenger was trapped in the elevator.

As a result of Local 4's refusal to allow Otis' employee to work the 5:00 p.m. to midnight shift at BU, a passenger that should have been extracted from a malfunctioning elevator in five

minutes was trapped for at least fifteen. In such situations, the longer a passenger is trapped, the more likely a passenger will attempt to free herself from the malfunctioning elevator. When a member of the riding public does so she exposes herself to great risk of harm in a variety of ways.

Otis requests an immediate ruling on its Motion For Reconsideration. Local 4 has amply illustrated why this Court should modify its earlier orders and issue an injunction against the Defendants in the form attached to Otis' June 16, 2004 Reply papers, or alternatively stay paragraphs 3 and 4 of the June 17, 2004 Order pending appeal.

Respectfully submitted,

Dated at Boston, Massachusetts
July 9, 2004

MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, Massachusetts 02108
Telephone : (617) 523-6666
Fax : (617) 367-3125

By _____
Nathan L. Kaitz (BBO #256760)
Joseph McConnell (BB0#566412)

and

DOWNS RACHLIN MARTIN, PLLC

Timothy E. Copeland Jr.
80 Linden Street
Brattleboro, VT 05301
(802) 258-3070
tcopeland@drm.com

ATTORNEYS FOR PLAINTIFF
OTIS ELEVATOR COMPANY

## CERTIFICATE OF SERVICE

The foregoing document was served today by hand upon Paul Kelly, Esquire, counsel for defendants, Segal, Roitman & Coleman, 11 Beacon Street, Boston, MA 02108, this 9th day of July 2004.

*/s/ Nathan L. Kaitz*

BRT.53384.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OTIS ELEVATOR COMPANY )<br>Plaintiff, )<br> )<br>v. )<br> )<br>LOCAL 4, INTERNATIONAL UNION )<br>OF ELEVATOR CONSTRUCTORS; )<br>MICHAEL LANGER, INDIVIDUALLY, )<br>and as BUSINESS MANAGER; )<br>KEVIN McGETTIGAN, INDIVIDUALLY, )<br>and as BUSINESS REPRESENTATIVE; )<br>STEVE MORSE, INDIVIDUALLY, and )<br>as BUSINESS REPRESENTATIVE; )<br>and all others conspiring, acting in concert )<br>or otherwise participating with them or )<br>acting in their aid or behalf, )<br> )<br>Defendants. ) | Docket No. 1:04-cv-11108-JLT |

## DECLARATION OF JOHN CAUGHEY

John Caughey, being duly sworn, deposes and says as follows:

1. I am employed by Otis Elevator Company ("Otis") as a Maintenance Supervisor and Territory Manager. I work out of Otis' Needham, Massachusetts office. I am responsible for a territory that includes the metropolitan Boston area.

2. I am responsible for supervising Otis employees who perform elevator service work at Boston University, where Otis has a contract to service hundreds of elevators located throughout several campus buildings (the "BU Contract").

3. On July 1 and 2, 2004, Otis employees employed at BU began informing me that Local 4 officials were claiming that unless Otis reached an "agreement" with Local 4, Local 4 would not allow employees to continue the staffing arrangement that has been in place at Boston

University for at least the nine years during which I have been in charge of Otis' service work at Boston University. Under that staffing arrangement, Service Mechanic Gordon Mattson was scheduled to begin working a 5:00 p.m. to 12:00 midnight shift at Boston University beginning on Tuesday, July 6, 2004.

4.      On Tuesday, July 5, 2004, I received a text message on my telephone from Service Mechanic Mattson stating that he was "sick" and would not work that evening. I immediately began asking other employees if they were willing to work the second shift at Boston University that evening. Several employees reported that IUEC Local 4 "persuaded" them not to take the 5:00 p.m. to 12:00 midnight shift. One elevator constructor Mechanic told me that "the word is out not to take the shift." As a result, I was unable to locate an employee to work the second shift at Boston University.

5.      Attached to this Declaration at Tab A is a screen report from Otisline, which is Otis' automated system for receiving and processing calls for elevator service. As set forth in this report, at 6:53:53 p.m. on Tuesday, July 6, 2004, Otisline received a service call advising that elevator number one at Claflin Hall on the Boston University campus had malfunctioned and a passenger was stuck in the elevator between floors 2 and 3. Malfunctioning elevators in which one or more passengers are trapped are referred to as "entrapments" and are considered emergencies. As set forth in the attached report, Otis' automated paging system attempted to dispatch Service Mechanic Mattson, who was scheduled to be on site that evening. However, as discussed above, Service Mechanic Mattson did not report to work that day and never responded to the call. Fortunately, an off-duty employee agreed to take the call. That employee was several minutes away when he received the call. As a result, he did not arrive at the entrapment until approximately 15 minutes after he received the service call.

3

6. If the Otis employee assigned to work the second shift at Boston University that evening had reported as scheduled, the employee would have been no more than 5 minutes away from the entrapment. Response time is one of the most important factors involved in preventing injuries arising from malfunctioning elevators. In such situations, the longer a passenger is trapped in an elevator, the more likely a passenger will attempt to free herself from the malfunctioning elevator. When a member of the riding public does so she exposes herself to great risk of harm in a variety of ways.

SWORN to under the pains and penalties of perjury.

Dated: July _9, 2004

_____
John Caughey

BRT.53381.1

**EXHIBIT A**



```
14:50                    OTIS - NOTEPAD TEXT                    PMS1353M
                                                                PAGE:   1
       BUILDING ID NKB 174817            MACHINE 243552 CLAFLIN HALL #1
       BUILDING NAME B U 273 BABCOCK     CUST CALL 07 06   18 53

     NOTES:                                                  LAST UPDT:
     ETA REQUIRED                              07/06/04 18:53:53 DSK
     AUTOPAGED     N106407 MATTSON, GORDO      07/06/04 18:54:02 DSK
     AUTOPAGED     N106407 MATTSON, GORDO      07/06/04 18:54:07 DSK
     EMG                                       07/06/04 18:55:07 DSK
     MATTSON CELL: V/M, LFT MSG                07/06/04 18:56:21 DSK
     UNASSIGNED    N106407 MATTSON, GORDO      07/06/04 18:56:40 AWO
     MANUAL PAGE   N150001 WARD, ROBERT W      07/06/04 18:56:45 AWO
     DISPATCHED    N150001 WARD, ROBERT W      07/06/04 18:56:45 AWO
     WARD CKD IN, SD HE IS ON CL               07/06/04 18:56:52 AWO
     ETA 10 MINS, CLLG CUST                    07/06/04 18:56:54 AWO
     ETA INDICATOR RESET                       07/06/04 18:57:00 AWO
     INFORMED STEVE                            07/06/04 18:57:20 AWO
     UPDATED ROSTER                            07/06/04 18:57:55 AWO
     REPORTED      N150001 WARD, ROBERT W      07/06/04 22:22:03 DSK

     PF1: PRIOR          PF3: PERSON LIST    ENTER: SAVE TEXT
     PF2: NEXT                               CLEAR: RETURN TO DISPATCHING

                                                              R 21 C 2
```

```
14:52                 REVIEW ALL CALLS BY OFFICE         CALL  37 OF 198
ASGN   N 150001 WARD, ROBERT W     NKB        M   RES 000 000 0000
DISPATCHED 07/07/04 13:35                    TZONE EST  ALT 617 212 2043
CALL METHOD RT A OT A WE/HOL A   PGR D 9   PGR 781 757 2600
DEFR P0800  ~RT:CELL 1ST~ PGR NXT|OT:CELL,PGR|WARD TKG RTE 32 CLS- 99/99/99

BLD ID NKB 174817                             CALL DSK  07 06   18 53
B U 273 BABCOCK          SALES 06  ROUTE 33 TYPE SCH  PAGE AWO 07 06  18 56
273 BABCOCK ST                     DAY 617 353 2105  DISP AWO 07 06  18 56
BOSTON          MA   02215 PM                 ARRV     MM DD   HH MM
ERIC OLESON, MARTIN MCKOWN                    COMP     MM DD   HH MM
                                              DEFR     MM DD   HH MM
                                              REPT DSK 07 06   22 22

PG "FOR RECORDS ONLY"|*S/B @ BLDG M-F 800-2400 & SAT 0800-1600, DONT  99/99/99
ASK F/OT AUTH DURING S/B HOURS|F/CLR USE B & G & DAY #->               99/99/99

A803 243552 CLAFLIN HALL #1 14 14 1967 11-UCL              ---     78671
CUST CLAFLIN HALL #1 STK W/PASS B/T 2 AND 3
RPTD ** EMG ***
CALL B & G                                  PHONE 617 353 2105     E
1:PRI 3:MECHSEL 5:REOPN 8:PAGE 10:APGR 11:ASGN 15:NOTE 18:ESCL 20:ORGPER 23:ETA
2:NXT 4:CLOSECL 7:DEFER 9:REPT 12:DISP                 OFFICE: _  NXT FN:

                                                              R 23 C 68
```